Geoffrey R. FERGUSON, Trustee, et al., Appellants,

v.

DRG/COLONY NORTH, LTD., Appellee.

No. 3–88–025–CV.

Court of Appeals of Texas, Austin.

Jan. 25, 1989.

Rehearing Denied Feb. 22, 1989.

Timothy B. Poteet, Lea & Chamberlain, Austin, for appellants.

Wallace Smith, Shapiro, Edens & Cook, Austin, for appellee.

SHANNON, C.J., and CARROLL and JONES, JJ.

JONES, Justice.

This appeal arose out of the 1984 sale of the 100–unit Colony North Apartments, located in Austin, from appellant John E. Grooms to appellee, DRG/Colony North, Ltd. An addendum to the contract of sale obligated Grooms to make certain roof repairs to the complex either before or after the closing. When Grooms failed to make the repairs to appellee's satisfaction, appellee began its own efforts at repairs, which Grooms initially paid for. When those efforts also failed to cure the problem, appellee had all the roofs of the apartment complex replaced and, pursuant to a provision in the contract of sale, proceeded to offset that expense against its note payments to the trust Grooms had established to receive such payments. Contending that he was not obligated to pay for a complete re-roofing of the complex, Grooms declared the note in default and posted the property for foreclosure. Appellee then instituted this suit to recover damages for breach of contract or alternatively to rescind the purchase. In addition to Grooms, the suit named as defendants Geoffrey R. Ferguson, Trustee; the Grooms Exchange Trust; and Russell G. Ferguson, Trustee. The trial court enjoined the scheduled foreclosure, and the case was later tried on the merits to a jury. After a verdict favorable to appellee on all issues, the trial court ordered the contract rescinded, together with an alternative award of damages, which was to take effect only if the rescission award was later reversed on appeal. This appeal followed.

### JURISDICTION

In the last of their thirty-seven points of error, appellants assert that the trial court erroneously entered a conditional judgment that was not final and did not require an election of remedies. Although appellants ask for a reversal rather than dismissal of the appeal, the point does bring to our attention a jurisdictional issue: with certain exceptions not applicable here, appellate courts can review only final and definite judgments. *Hinde v. Hinde*, 701 S.W. 2d 637 (Tex.1985). Accordingly, we will review point of error thirty-seven first.

In its trial petition, appellee alternatively sought rescission of the purchase agreement or damages for its breach. In the judgment, the trial court ordered rescission, allowing as part of that relief a recovery of all sums expended by appellee in connection with the transaction, together with exemplary damages and attorney's fees. Following this award, the judgment contains the following:

> It is further ordered, adjudged and decreed that in the event an appellate court of final review reverses the judgment of rescission set forth above, then plaintiff DRG/Colony North, Ltd. shall have the following judgment of damages: ....

The judgment then proceeded to order a complete damages award for breach of the contract of sale, including exemplary damages and attorney's fees, to take effect only in the event the award of rescission was later reversed by an appellate court.

A final judgment is one that disposes of all parties and issues in the case. *Koepke v. Koepke*, 732 S.W.2d 299 (Tex. 1987). A judgment cannot condition recovery on uncertain events or base its validity on "what the parties might or might not do post-judgment." *Hinde*, 701 S.W.2d at 639. A judgment must be definite and certain. *International Security Life Insurance Co. v. Spray*, 468 S.W.2d 347 (Tex. 1971). A judgment generally should not be conditional, alternative, or contingent. *Hill v. Hill*, 404 S.W.2d 641 (Tex.Civ.App. 1966, no writ).

In more recent years, these general rules have usually been construed and applied narrowly, with the result that finality has often been found where it might not have been in earlier years. It is now established that so long as the judgment definitely settles the rights controverted by the parties, the judgment is final and appealable even though further proceedings will be required to carry the judgment into effect. In *Hargrove v. Insurance Inv. Corp.*, 142 Tex. 111, 176 S.W.2d 744 (1944), the judgment stated that the plaintiff was awarded $15,800 and that defendant was indebted to plaintiff for an additional $15,800, but that plaintiff was not entitled to receive or collect the additional money until final disposition of a separate pending lawsuit. The supreme court held the judgment to be final, stating that although the amount to be adjudged under the second part of the judgment was presently uncertain, such uncertainty exists any time there is a foreclosure of a lien with direction for the collection of the unpaid balance after application of the proceeds of the sale. In *Ferguson v. Ferguson*, 161 Tex. 184, 338 S.W.2d 945 (1960), the trial court's judgment stated that defendant must furnish to plaintiff an accounting of the profits of a business and pay plaintiff one-half of the net profits. The supreme court held this to be final, stating that the finality of a judgment that settles the rights of the parties is not affected by the fact that further proceedings may be required to carry it into full effect if they are merely incidental to the proper execution of the judgment. In *Hinde*, the trial court's judgment awarded plaintiff $25,000 for improper cancellation of a life insurance policy, but provided that if defendant caused the policy to be reinstated at his expense he would be credited with $25,000 on the judgment. The supreme court held that this judgment was final because it clearly established plaintiff's right to receive a certain amount of compensation, and it was only the *form* of compensation that was left uncertain.

The cases most directly on point with respect to the instant case are those dealing with an award of additional attorney's fees in the event of an appeal. That issue was settled in *Spray*, in which the trial court's judgment awarded plaintiff attorney's fees of $1,750, provided, that if defendant did not appeal, the judgment should be credited with $1,000, and if defendant appealed to the court of appeals but not the supreme court, the judgment should be credited with $500. In affirming the trial court's award, the supreme court stated that it would not be a problem for the court clerk to look at the papers on file to see if application for writ of error had been made, and that the form of the judgment was not controlling as long as certainty was achieved. *Spray*, 468 S.W.2d at 349–50.

Cases in which appeals were dismissed on the basis of lack of finality have been more obvious ones, such as those in which the actual effectiveness of the judgment itself, or the very right of plaintiff to recover at all, was conditioned on some future, uncertain event. *See, e.g., Dodd v. Daniel*, 89 S.W.2d 494 (Tex.Civ.App.1935, no writ) (judgment awarded cancellation of a deed, but further recited that the judgment was conditioned on, and to take effect only upon, the payment by defendant into the registry of the court of $70, with no disposition of plaintiff's case if payment was not made); *Wrather v. Wrather*, 154 S.W.2d 955 (Tex.Civ.App.1941, writ ref'd w.o.m.) (trial court's order conditioned its custody and visitation rulings on the filing by both husband and wife of $5,000 bonds that they would obey the orders of the court and would not remove their child from the jurisdiction of the court, with no provision for the judgment if one or both bonds were not filed); *Abell v. Abell*, 246 S.W.2d 248 (Tex. Civ.App.1951, no writ) (divorce decree awarded wife $10,000, but conditioned its payment on the execution by her of such documents as may be necessary to show that certain community property was not owned by her alone but by husband and wife jointly, making no provision for what the judgment would be if the documents were not signed); *Santos v. Garcia*, 624 S.W.2d 919 (Tex.Civ.App.1981, no writ) (trial court's judgment provided that plaintiff recover property from defendant "upon plaintiff presenting a written proof of ownership"). *See also McCormick Operating Co. v. Gibson Drilling*, 717 S.W.2d 425 (Tex.App.1986, no writ); *Tully v. Tully*, 595 S.W.2d 887 (Tex.Civ.App.1980, no writ); *Fazekas v. University of Houston*, 565 S.W.2d 299 (Tex.Civ.App.1978, writ ref'd n.r.e.); *Hill v. Hill*, 404 S.W.2d 641 (Tex. Civ.App.1966, no writ); *Volkmer v. Chase*, 354 S.W.2d 611 (Tex.Civ.App.1962, writ ref'd n.r.e.).

The judgment in the present case, on the other hand, is no more indefinite than any judgment that awards additional attorney's fees in the event of an appeal (and, by implication, on the condition of an affirmance). It is not a truly alternative judgment such as "plaintiff is awarded judgment against defendant for A or alternatively for B," with no indication of which relief has been selected. Nor is it in the vein of the cases in which the judgment does not actually become effective until the occurrence of some future, uncertain event, and which does not provide for any relief in case the event does not happen. Here the relief granted is clear and definite, and there is nothing left for the trial court to decide. Nor has appellee failed to make an election; it has, by its own admission, elected rescission. The judgment in the instant case simply does not fit into the mold of appeals that have been dismissed because the trial court's judgment was indefinite, uncertain, or conditional. We hold that the judgment in the instant case was final and appealable.

Determining that the judgment was final and appealable does not, however, end our jurisdictional inquiry. Appellants' point of error also suggests the question of whether the trial court had judicial authority—i.e., jurisdiction—to grant the alternative award of damages. Accordingly, we will address that question.

In *Morrow v. Corbin*, 122 Tex. 553, 62 S.W.2d 641, 644 (1933), the Supreme Court stated the following:

"Jurisdiction" of a particular court is that portion of the judicial power which it has been authorized to exercise by the Constitution or by valid statutes.

Since the Constitution has erected a system of both trial and appellate courts, it is obvious that it was never the purpose of the Organic Law to permit one tribunal to interfere with the lawful exercise by another of the judicial power allocated to it. It was the purpose of the framers of the Constitution to make each tribunal independent of all others in the exercise of the authority confided to it, except in so far as powers of revision or direction may be given in the Organic Law or valid statutes thereunder to appellate over trial tribunals. This is made plain by the repeated decisions of the appellate courts in mandamus cases to the effect that while they have power to direct a trial

court to proceed to trial, they have no authority to and will not direct the inferior tribunal how to try or decide a case before it.

The various provisions of the Constitution and laws defining the jurisdiction of courts should be construed "in such manner as to harmonize them, to the end that each court, whether trial or appellate, shall be permitted to exercise the power conferred upon it without conflict with the authority confided to another tribunal." *City of Tyler v. St. Louis Southwestern Ry. Co. of Tex.*, 405 S.W.2d 330, 332–33 (Tex.1966), *quoting from Morrow*, 62 S.W.2d at 645.

By constitutional mandate, the jurisdiction of district courts in Texas "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, *except in cases where exclusive, appellate, or original jurisdiction may be conferred by this constitution or other law on some other court, tribunal, or administrative body.*" Tex. Const.Ann. art. V, § 8 (Supp.1989) (emphasis added). *See also* Tex.Gov't Code Ann. § 24.007 (1988). The various courts of appeals are granted "appellate jurisdiction co-extensive with the limits of their respective districts, which shall extend to all cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law." Tex. Const.Ann. art. V, § 6 (Supp.1989). *See also* Tex.Gov't Code Ann. § 22.220 (1988). "Appellate jurisdiction" has been defined as "the power and authority conferred upon a superior court to rehear and determine—that is to review—causes which have been tried in inferior courts." *Morrow*, 62 S.W.2d at 646. Courts of appeals will not attempt to exercise original jurisdiction in the absence of an express and specific grant of that authority. *Volkmer v. Chase*, 354 S.W.2d 611 (Tex.Civ.App.1962, writ ref'd n.r.e.).

In connection with the exercise of their appellate jurisdiction, courts of appeals have the following duty: "When the judgment or decree of the court below shall be reversed, the court [of appeals] shall proceed to render such judgment or decree as the court below should have rendered...."

Tex.R.App.P.Ann. 81(c) (Pamph.1988). The supreme court has essentially the same duty. Tex.R.App.P.Ann. 180 (Pamph.1988). When a particular court is expressly granted jurisdiction over a particular area by the constitution, it is presumed that the jurisdiction so conferred is exclusive. *Eichelberger v. Eichelberger*, 582 S.W.2d 395 (Tex.1979).

The jurisdiction of courts of appeals to review causes tried in the lower courts includes the authority to reverse the judgments of those courts, if harmful error is found, and the specific duty in such instances to render the judgment that the court below should have rendered, except when it is necessary to remand. Since the appellate jurisdiction of courts of appeals has been defined to include that duty, district courts cannot also have authority to perform the same function. Tex. Const. Ann. art. V, § 8 (Supp.1989). In granting appellee a specific award of damages "in the event an appellate court of final review reverses the judgment of rescission," the trial court sought to exercise the duty and authority expressly granted to courts of appeals as part of their appellate jurisdiction. The court below was without authority to do so, and that portion of its judgment is erroneous.

Judicial action without jurisdiction is void. *Cleveland v. Ward*, 116 Tex. 1, 285 S.W. 1063 (1926). Even a mere phrase contained in a judgment may be in excess of a trial court's judicial power. *See Blair v. State*, 640 S.W.2d 867 (Tex.1982). It is well settled, however, that a judgment may be void in part and valid in part, so long as the valid portion is not dependent on the void portion. *Blair*, 640 S.W.2d at 867; *Kubena v. Hatch*, 144 Tex. 627, 193 S.W.2d 175 (1946). In the instant case, the rescission award of the trial court's judgment clearly is in no way dependent on the contingent damages award. Accordingly, we will disregard the void damages award and proceed to consider appellants' points of error pertaining to the rescission award.

## JURY TRIAL

■ In their first point of error, appellants assert that the trial court erred in granting appellee's late jury request. Although the case was set for jury trial to begin July 17, 1986, a formal jury request was first made on July 14 and a jury fee paid on July 15. Nonetheless, the trial court allowed a jury.

At the time of this trial, Rule 216 of the Texas Rules of Civil Procedure (1976) provided as follows:

> No jury trial shall be had in any civil suit, unless application be made therefor and unless a fee of five dollars ... be deposited by the applicant with the clerk to the use of the county on or before appearance day or, if thereafter, a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than ten days in advance.

Despite the mandatory wording of Rule 216, trial courts have been allowed discretion to grant a late request for jury trial. *Lebman v. Sullivan*, 198 S.W.2d 280 (Tex. Civ.App.1946, writ ref'd n.r.e.). Indeed, it has been stated that a late jury request *should* be granted if: (1) to grant the jury trial would not cause injury to the adverse party through postponement of the trial or otherwise, and (2) to grant the jury trial would not disrupt the court's docket or interfere with the handling of the court's business. *Lenamond v. North Shore Supply Co.*, 667 S.W.2d 283 (Tex.App.1984, no writ).

In the instant case the record reflects that the cause had first been set for trial, at appellants' request, on the *jury docket* for June 9, 1986. The case was then reset twice on the jury docket, both times by the agreement of all parties. It is significant that appellants knew the case was set on the jury docket and so were not surprised. *See McCormick v. Texas Comm. Bank Nat. Ass'n*, 751 S.W.2d 887 (Tex.App.1988, writ denied). There is no showing that the granting of the late request injured appellants or interfered with the court's docket. It was not an abuse of discretion for the trial court to grant the late jury request in these circumstances. Point of error one is overruled.

## EXTRINSIC EVIDENCE

In points of error two, three, four, and fifteen, appellants assert, on several grounds, that the trial court erred in excluding testimony regarding Grooms's understanding of his contractual obligation to make the roofs "water-tight."

Appellants first argue that the pertinent contract language is ambiguous and hence the trial court erred in excluding evidence of the parties' intentions regarding Grooms's duties under the contract. The contract language in question is as follows: "Furthermore, Seller agrees to repair the roofs of the Property, in a good, substantial and workmanlike manner so that the roofs are 'water-tight'." Appellants contend that the term "water-tight" is ambiguous and that they should have been allowed to present extrinsic evidence showing that Grooms's duty under the contract was simply to repair visible leaks that were present at closing, not to make the roofs literally water-tight.

The general rules of contract construction are well established:

1. The primary concern of the court is to ascertain the true intention of the parties.
2. Courts should examine and consider the entire writing in an effort to harmonize and give effect to all its provisions so that none will be rendered meaningless.
3. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument.
4. If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law.
5. A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning.

6. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered.

*Coker v. Coker*, 650 S.W.2d 391 (Tex.1983).

■ We believe the trial court did not err in concluding that the contract is unambiguous. It is true that the term "water-tight" may have different meanings in different contexts. For example, if the contract had been for the construction of a submarine, the term would have one meaning. In the context of a contract for the construction or repair of a residence, however, the term would have a different—but no less clear—meaning. In both cases the term means "constructed so that water cannot enter," but we think the qualification "when the structure is used in its usual or intended way" is necessarily implied. In the normal way a residence is used, the roof need only repel rain without leaking. Accordingly, considering the contract as a whole and in light of the circumstances present when the contract was signed, we believe the term "water-tight" can be given a definite legal meaning: the roofs of the Colony North Apartments would be put in a condition in which they did not leak when it rained.

Nevertheless, appellants argue that the fact the term was enclosed in quotation marks shows that the parties had a special meaning in mind. Having concluded that the meaning of the word is clear, we may not use punctuation marks to create an ambiguity. *Anderson & Kerr Drilling Co. v. Bruhlmeyer*, 134 Tex. 574, 136 S.W.2d 800 (1940).

We hold the contract was not ambiguous. Accordingly, as to that ground the trial court correctly excluded the proffered testimony of appellants' witnesses regarding their understanding of the disputed term. *Alba Tool & Supply v. Industrial Contractors*, 585 S.W.2d 662 (Tex.1979); *Lewis v. East Texas Finance Co.*, 136 Tex. 149, 146 S.W.2d 977 (1941).

■ Appellants next contend that evidence of Grooms's understanding was ad-missible because this was an action in which declaratory relief was requested. Appellants' reliance on *Hydro–Line Mfg. Co. v. Pulido*, 674 S.W.2d 382 (Tex.App. 1984, no writ), is misplaced. *Hydro–Line* stands for the proposition that pleadings for declaratory judgment can satisfy the requirement that ambiguity be *pleaded. See Vickers v. Vickers*, 553 S.W.2d 768 (Tex.Civ.App.1977, no writ). *Hydro–Line* does not, however, support the view that extrinsic evidence of the parties' intention is admissible for the interpretation of an *unambiguous* contract merely because declaratory relief has been requested.

■ Appellants also complain that evidence of Grooms's understanding of the meaning of the term "water-tight" was admissible because it was relevant to his intent to perform under the agreement. On several occasions Grooms testified without objection that he understood the contract to obligate him to repair only leaks existing at the time of closing, not to repair leaks that originated after closing, and certainly not to replace the entire roof. In addition, however, appellants sought to introduce testimony of a conversation in which one of appellee's principals allegedly concurred in that interpretation. Although such evidence was not admissible to vary the terms of the written agreement, it might have been admissible on the issues of fraud and exemplary damages. *See Anderson v. Anderson*, 620 S.W.2d 815 (Tex.Civ.App. 1981, no writ); *Pulchny v. Pulchny*, 555 S.W.2d 543 (Tex.Civ.App.1977, no writ). In the only bill of exception made on this testimony, however, it was offered expressly "for the purpose of showing that there is not only a facial but a latent ambiguity in the language of the contract." The testimony was not admissible for that purpose, and no limited offer was made. The trial court therefore did not err in excluding it. *Doerfler v. Espensen Co.*, 659 S.W.2d 929 (Tex.App.1983, no writ).

■ Finally, appellants argue that evidence of Grooms's understanding of his contractual obligations was admissible because the trial court admitted such testimo-

ny from appellee. Appellee's witnesses did nothing more than confirm that the deal between the parties was as stated in the written agreement. The parol evidence rule prohibits only extrinsic evidence that tends to *contradict* the terms of a written agreement; it does not prohibit evidence that confirms what the agreement says. *Hubacek v. Ennis State Bank*, 159 Tex. 166, 317 S.W.2d 30 (1958). Points of error two, three, four, and fifteen are overruled.

## PLEADINGS

In points of error five through fourteen, appellants claim that appellee did not adequately plead a cause of action for fraud. As a result, they argue, the trial court erred in admitting evidence of intent, in submitting special issues concerning fraud and rescission, and in awarding rescission and exemplary damages.

Appellee's second amended petition made no attempt to plead a cause of action for fraud. Appellee's third amended petition, however, filed two weeks before trial, contained the following relevant changes from the earlier petition:

(1) Various headings were deleted which had clearly labelled the causes of action asserted;

(2) Paragraph VI alleged in part: "The actions of the Defendants were fraudulent as they relate to DRG/Colony North and the purchase of the Property for which DRG/Colony North should be entitled to damages";

(3) Paragraph VII alleged, in part, that plaintiff was entitled to exemplary damages;

(4) The prayer requested an award of exemplary damages; and

(5) The prayer requested rescission as alternative relief.

Other parts of the petition made it clear that appellee's main complaint was that "[s]ubsequent to closing, Grooms did not repair the roofs of the Property in a good, substantial and workmanlike manner so that the roofs were water-tight, as required by the First Addendum." Appellants did not specially except to this pleading.

A petition that gives fair and adequate notice of the facts on which the pleader bases his claim is sufficient, since it provides the opposing party with enough information to enable him to prepare a defense. *Roark v. Allen*, 633 S.W.2d 804 (Tex.1982). In determining whether a pleading gives fair notice, a petition will be construed liberally in favor of the pleader if no special exceptions have been filed. *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183 (Tex. 1977).

The absence of special exceptions has been a significant factor in the way courts view pleadings. For example, if special exceptions have been sustained and the pleader has refused to amend, it has been held that a petition is inadequate unless it specifically alleges all elements of a cause of action. *Sage v. Wong*, 720 S.W.2d 882 (Tex.App.1986, writ ref'd n.r.e.); *Rodriguez v. Yenawine*, 556 S.W.2d 410 (Tex. Civ.App.1977, no writ). On the other hand, if no special exceptions have been filed, a court will look to the pleader's intendment and uphold the pleading even if some elements of a cause of action have not been specifically alleged. *Roark v. Allen, supra; Essex Crane Rental v. Striland Const. Co.*, 753 S.W.2d 751 (Tex.App.1988, writ denied). Further, every fact that can reasonably be supported by the specific allegations contained in the pleading will be inferred. *Roark v. Allen, supra; Essex Crane Rental v. Striland Const. Co., supra.*

The elements of fraud are: (1) that a material representation was made, (2) that it was false, (3) that when the speaker made it he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, (4) that he made it with the intention that it should be acted upon by the party, (5) that the party acted in reliance on it, and (6) that he thereby suffered injury. *Stone*, 554 S.W. 2d at 185. In the instant case, appellee did not specifically plead each one of those elements. Appellee did, however, plead that "the actions" of appellants were "fraudulent" as they related to appellee and "the purchase of the Property." Since

the actions complained of by appellee throughout the petition concerned Grooms's failure to fulfill his agreement to repair the roofs so they were water-tight, it can be inferred that appellee was alleging a fraud claim that Grooms had made that promise with no intention of fulfilling it and for the purpose of inducing appellee to purchase the property, and that appellee had in fact relied on the promise to its detriment. Based on the rules stated above, we hold that appellee's general pleading was sufficient. Points of error five through fourteen are overruled.

## SUFFICIENCY OF THE EVIDENCE

Points of error sixteen, nineteen, and twenty attack the legal and factual sufficiency of the evidence to support the jury's answers to special issues one, five, and six. By their answers to those issues, the jury found that Grooms failed to repair the roofs "in a good, substantial, and workmanlike manner so as to make them water-tight"; that at the time of the sale Grooms "did not intend to do that which was necessary to repair the roof in a good, substantial, and workmanlike manner so as to make them watertight"; and that appellee reasonably relied on Grooms's agreement to repair the roofs.

In considering a "no evidence" point, the reviewing court must reject all evidence contrary to the jury's findings and consider only the facts and circumstances which tend to support those findings. *Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609 (1950). In reviewing factual sufficiency points of error, the court considers all of the evidence to determine whether the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

While acknowledging the existence of evidence that Grooms never succeeded in stopping the roof leaks, appellants attack the answer to special issue one by asserting that Grooms's only obligation was to repair the roofs in a good, substantial, and workmanlike manner, with no guarantee that his efforts would be successful. We disagree. The language of the agreement, considered in the context of the contract as a whole and the circumstances present when it was signed, clearly obligated Grooms to make the roofs water-tight, which, as discussed above, meant he had to stop the roof leaks. As appellants concede, there was ample evidence that he failed in this regard.

In answer to special issue five, the jury found that at the time he made the promise to repair the roofs, Grooms did not intend to do "that which was necessary ... to make them watertight." Appellants argue that although Grooms did not intend to replace the roofs, he did intend to repair them. Once again appellants ignore Grooms's obligation to make the roofs water-tight, i.e., to stop the leaks. There was evidence that Grooms had been told that visible leaks could be repaired with a "patch" method. When, after many attempts by both parties to stop the leaks by using that method, it became apparent that a more comprehensive approach to the problem was required, Grooms refused to do more. From this evidence the jury was entitled to draw the logical inference that Grooms's intention to make the roofs water-tight was a conditional one: he intended to stop the leaks *only* if that could be accomplished in short order with a relatively inexpensive spot-patching procedure.

In addition, Grooms refused on numerous occasions to admit that he had made a blanket promise to make the roofs water-tight. He consistently stated that he understood his obligation to be only to fix the leaks that existed at the time of closing, not to re-roof. Fraudulent intent may be proved by the breach of a promise plus a denial by the defendant that he ever made the promise. *Duval County Ranch Co. v. Wooldridge,* 674 S.W.2d 332 (Tex.App.1984, no writ). We hold the evidence to be sufficient, legally and factually, to support the jury's finding of fraudulent intent.

The jury also found, in answer to special issue six, that appellee reasonably relied on Grooms's promise to repair the roofs. There was unequivocal testimony

that appellee would not have bought the apartment complex without Grooms's agreement to make the roofs water-tight. This is sufficient to show that the promise was an inducing cause of appellee's completion of the purchase. Points of error sixteen, nineteen, and twenty are overruled.

### EXEMPLARY DAMAGES

In points of error twenty-one and twenty-two, appellants attack the sufficiency of the evidence to support the jury's exemplary damages finding of $400,000 in answer to special issue eight, and to support the trial court's finding stated in the judgment that Grooms acted willfully and maliciously.

▮▮▮▮ A finding of conscious indifference to the rights of others, as well as intent to harm, will support an award of exemplary damages. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432 (Tex.1986); *Trenholm v. Ratcliff*, 646 S.W.2d 927 (Tex. 1983). A fraudulent representation that warrants rescission also authorizes a recovery of exemplary damages. *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567 (Tex.1963); *Russell v. French & Associates, Inc.*, 709 S.W.2d 312 (Tex. App.1986, writ ref'd n.r.e.). In answer to special issue five, the jury found that at the time he made the promise, Grooms did not intend to repair the roofs so as to make them water-tight. We have held that the jury's answer to that special issue was supported by sufficient evidence. This finding is sufficient to infer at least conscious disregard and hence to authorize an award of exemplary damages. *Spoljaric, supra; Trenholm, supra.* Accordingly, we need not review the trial court's finding

that Grooms acted willfully and maliciously. Points of error twenty-one and twenty-two are overruled.[1]

### OTHER DEFENDANTS

▮▮▮▮ By points of error twenty-three and twenty-six, appellants complain of the trial court's judgment as it relates to Russell G. Ferguson, Trustee, a defendant below who is not an appellant. Although Russell G. Ferguson, Trustee, was named in the trial court as a defendant, was served with citation, answered, and was represented by counsel in the trial, no relief was granted against him. He did not perfect an appeal. Nonetheless, the parties who are named as appellants complain that the trial court erred in failing to render a take-nothing judgment as to him. A party on appeal may not complain of errors which do not injuriously affect him or which merely affect the rights of others. *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87 (Tex.1973); *Singleton v. Terrel*, 727 S.W.2d 688 (Tex.App.1987, no writ). Accordingly, points of error twenty-three and twenty-six are overruled.[2]

▮▮▮ By points of error twenty-four, twenty-five, and twenty-seven, appellants complain of the trial court's judgment against Geoffrey R. Ferguson, Trustee, and the Grooms Exchange Trust. In addition to ordering the return of the $1,850,-000 promissory note executed by appellee and the delivery to appellee of a fully executed release, the trial court also awarded appellee the following monetary recovery against Geoffrey R. Ferguson, Trustee, and the Grooms Exchange Trust, as well as John E. Grooms: (1) $1,360,400, represent-

---

**1.** Appellants do not appear by these points of error to be asserting that the award of exemplary damages is *excessive,* but rather that appellee is not entitled to any such award at all. Nonetheless, we have also reviewed the amount of the exemplary damages award on the basis of the standards set forth in *Alamo Nat. Bank v. Kraus,* 616 S.W.2d 908 (Tex.1981), and *Tatum v. Preston Carter Co.,* 702 S.W.2d 186 (Tex.1986), and find it to be reasonable.

**2.** The record indicates that Russell G. Ferguson was the trustee in the deed of trust granted by appellee to secure its note to "Geoffrey R. Fergu-

son, Trustee of the Grooms Exchange Trust." Appellee originally sought and obtained a temporary injunction to prevent a threatened foreclosure on the property after appellee ceased making payments on the note. The final judgment neither granted any injunctive relief nor made any mention whatsoever of Russell G. Ferguson, Trustee. It did, however, conclude with the following standard statement: "All relief not mentioned herein is denied." This had the effect of rendering a take-nothing judgment as to that defendant.

ing "all sums expended by appellee in connection with the Colony North Apartments"; (2) $181,547.78 as prejudgment interest; and (3) $400,000 as exemplary damages.

Although the deed to appellee was from John E. Grooms, it appears that for tax purposes Grooms directed appellee to make all payments to Geoffrey R. Ferguson, Trustee of the Grooms Exchange Trust. Accordingly, all of appellee's payments toward the purchase price of the apartment complex, amounting to $781,510 of the $1,360,400, were received by the Grooms Exchange Trust, of which Geoffrey R. Ferguson was trustee and John E. Grooms was beneficiary. To the extent of those payments, and interest thereon, judgment for restoration to appellee was proper against Geoffrey R. Ferguson, Trustee, and the Grooms Exchange Trust.

The remaining actual damages awarded, however, amounting to $578,890 of the $1,360,400, were not paid to or received by the Trustee or the Trust, but were out-of-pocket expenses for such matters as property damage and appellee's own attempts to repair the roofs. It is true that the accomplishment of full justice being a fundamental principle of equity, special damages in addition to rescission will be allowed where both are essential to accomplish full justice. *Smith v. National Resort Communities, Inc.*, 585 S.W.2d 655 (Tex.1979). It was therefore appropriate for the trial court to award appellee such special damages as were supported by the evidence. Appellee does not contend, however, that Geoffrey R. Ferguson, Trustee, or the Grooms Exchange Trust committed any fraud or breached any duty, contractual or otherwise. Accordingly, there was no basis for the award of special damages and exemplary damages against those parties. Points of error twenty-four, twenty-five, and twenty-seven are therefore sustained, and the judgment of the trial court will be modified to reduce the monetary award against Geoffrey R. Ferguson, Trustee, and the Grooms Exchange Trust to the sums actually received by them, $781,510, plus prejudgment interest.

## FORM OF SPECIAL ISSUES

In points of error twenty-eight, twenty-nine, and thirty, appellants attack the form of submission of special issues one, five, and six. Chief among the grounds asserted is that each of those issues constituted a comment on the weight of the evidence because the term "watertight" was used in the special issues without quotation marks as it had been in the contract of sale. An issue may not suggest to the jury the trial judge's opinion concerning the matter about which the jury is asked, nor assume the truth of a material controverted fact. Tex.R.Civ.P.Ann. 277 (Supp.1988); *Alvarez v. Missouri–Kansas–Texas RR Co.*, 683 S.W.2d 375 (Tex.1984); *City of Amarillo v. Langley*, 651 S.W.2d 906 (Tex.App.1983, no writ). The omission of the quotation marks here, however, did neither and so did not constitute a comment on the weight of the evidence.

Appellants also assert that special issues five and six improperly inquired about Grooms's intention and agreement "to do that which was necessary" to make the roofs water-tight, instead of simply inquiring about his intention and agreement to make the roofs water-tight. In the context of the present case, we do not believe there is any significant difference in meaning between the two phrases. Accordingly, we hold that any error was harmless. Tex.R.App.P.Ann. 81(b)(1) (Pamph.1988). Points of error twenty-eight, twenty-nine, and thirty are overruled.

## ADEQUATE REMEDY AT LAW

In point of error thirty-one, appellants assert that the trial court erred in awarding rescission because appellee failed to plead or prove that it had no adequate remedy at law.

There is authority that a party seeking the equitable remedy of rescission must plead and prove the absence of an adequate remedy at law. *See Ryan v. Collins*, 496 S.W.2d 205 (Tex.Civ.App.1973, writ ref'd n.r.e.); *Chenault v. County of Shelby*, 320 S.W.2d 431 (Tex.Civ.App.1959, writ ref'd n.r.e.). Although the prayer in appellee's

trial petition requested rescission, the lack of an adequate remedy at law was not specifically pleaded. During the direct testimony of appellee's first witness, however, the entire claim of rescission was explored in depth, concluding with the following testimony:

Q: If you would just recover the damages that are up on that board there on Plaintiff's Exhibit 35, if you recover these damages and your attorney's fees that aren't included in that, and some interest that's not included in that, will that really make DRG/Colony North whole in this transaction?

A: No, it will not....

We hold that the issue of the absence of an adequate remedy at law was clearly tried by consent, Tex.R.Civ.P.Ann. 67 (1979); *Ranger Insurance Co. v. Robertson,* 707 S.W.2d 135 (Tex.App.1986, writ ref'd n.r.e.), and that the testimony quoted above constitutes more than a scintilla of evidence of the absence of such a remedy. Point of error thirty-one is overruled.

### ATTORNEY'S FEES

In point of error thirty-two, appellants complain of the trial court's award of attorney's fees. By statute, attorney's fees may be recovered if the claim is "for ... an oral or written contract." Tex.Civ.Prac. & Rem.Code Ann. § 38.001 (1986). When a contract is rescinded, however, "it is annulled and abrogated and the rights of the parties under it are extinguished." *Tuttlebee v. Tuttlebee,* 702 S.W.2d 253, 257 (Tex. App.1985, no writ). Accordingly, a suit which seeks and obtains the rescission of a contract cannot be one "for" the contract rescinded, because a contract no longer exists.

 Appellee attempts to distinguish *Tuttlebee* by asserting that it involved the cancellation of a deed, while the instant case involves rescission of a contract for sale. The terms "rescission" and "cancellation" are virtually synonymous. If there is a distinction, it is only that rescission is a general undoing of an agreement, *Cheek v. Metzer,* 116 Tex. 356, 291 S.W. 860 (1927), while cancellation is a more formal annul-

ment or rendering of an instrument ineffective as a legal obligation. *Hickox v. Hickox,* 151 S.W.2d 913 (Tex.Civ.App.1941, no writ). *See* Black On Rescission and Cancellation § 1 (2nd Ed.1929); *cf. Manges v. Guerra,* 621 S.W.2d 652 (Tex.Civ.App. 1981), *rev'd in part on other grounds,* 673 S.W.2d 180 (Tex.1984) (rescission is retroactive while cancellation is prospective).

 Appellee argues that *NRC, Inc. v. Pickhardt,* 667 S.W.2d 292 (Tex.App.1984, writ ref'd n.r.e.), stands for the proposition that attorney's fees may be awarded in a suit for rescission. While *NRC* was a suit for damages *or* rescission, it appears that the trial court actually awarded damages, not rescission. The case therefore does not support appellee's position. We hold that it was error to award attorney's fees where rescission of the agreement was ordered. Point of error thirty-two is sustained.

### APPELLANT'S REQUESTED ISSUES

 In point of error thirty-three, appellants assert as error the failure of the trial court to submit special issues they requested. It is unclear from appellants' brief if this point refers to all fifteen issues requested by appellants or only to the six issues included in an appendix to their brief. Moreover, other than blanket statements that each issue was raised by the pleadings, was supported by some evidence, and that it was error not to submit them, appellants give this Court no guidance as to why the issues should have been submitted, nor any assistance in determining what harm, if any, resulted from the failure to submit them. No authorities are cited. In light of the above, this Court need not and does not address the point of error. *See Sandler v. Bufkor, Inc.,* 658 S.W.2d 289 (Tex.App.1983, no writ); *Rayburn v. Giles,* 182 S.W.2d 9 (Tex.Civ.App. 1944, writ ref'd). Point of error thirty-three is overruled.

### OMITTED FINDINGS

By points of error thirty-four and thirty-five, appellants attack appellee's failure to obtain jury findings on some elements of fraud, as well as the sufficiency of the

evidence to support any findings on the unsubmitted issues.

■ Appellants' sufficiency complaint anticipates our decision on their complaint as to the lack of jury findings. Appellants neither objected to the failure to submit issues on the missing fraud elements nor requested their submission in writing. Accordingly, the judgment may not be reversed on that ground. Tex.R.Civ.P.Ann. 279 (1977). Moreover, since issues of Grooms's intent to perform and appellee's reliance on the promise—both necessarily referable to a fraud action—were submitted to the jury and answered in appellee's favor, Rule 279 requires that the unsubmitted elements of the fraud claim be deemed to have been found by the trial court in such manner as to support the judgment.

■ Appellants also assert there was no evidence to support the deemed findings. The six elements of actionable fraud are stated above. *See Stone*, 554 S.W.2d at 185. When the representation is a promise to take future action rather than a statement of present fact, the "knowledge-of-falsity" element requires a showing that the promise was made with a present intent not to perform. *Stanfield v. O'Boyle*, 462 S.W.2d 270 (Tex.1971). Since special issues were submitted on the intent and reliance elements, findings are deemed only as to the other four. There was testimony that appellee would not have proceeded with the purchase without Grooms's promise to make the roofs water-tight; therefore, there is sufficient evidence that the promise was material. Grooms did not in fact stop the roof leaks; therefore, the promise was false. The circumstances show that Grooms intended for his promise to be believed and relied on; therefore, the evidence was sufficient that he made the promise with the intention that appellee should act on it. There is ample evidence, and the jury found in answer to one of the breach of contract issues, that Grooms's failure to make the roofs water-tight caused damage to the apartment complex; therefore, appellee suffered injury as a result of the false promise that the roofs

would be repaired so as to be water-tight. Points of error thirty-four and thirty-five are overruled.

In addition to the points of error discussed above, appellants' brief contains a few points that relate exclusively to the trial court's award of damages for breach of contract. In light of our holding with regard to the alternative award of damages, we need not discuss those points.

## CONCLUSION

For the foregoing reasons, that portion of the trial court's judgment which purports to award damages "in the event an appellate court of final review reverses the Judgment of Rescission" is vacated; the remainder of the trial court's judgment is modified to eliminate any award of attorney's fees, to eliminate the award of exemplary damages against Geoffrey R. Ferguson, Trustee, and the Grooms Exchange Trust, and to reduce the amount of actual damages awarded against Geoffrey R. Ferguson, Trustee, and the Grooms Exchange Trust to $781,510 plus prejudgment interest on that amount at the rate of ten percent per annum from July 23, 1986, to the date of judgment, and as so modified is affirmed.