

# NUMBER 13-12-00647-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GLEN JONES,                                                                    Appellant,

v.

JIMMY D. HAND,                                                                Appellee.

## On appeal from the 97th District Court
## of Montague County, Texas.

## MEMORANDUM OPINION

## Before Chief Justice Valdez and Justices Benavides and Longoria
## Memorandum Opinion by Chief Justice Valdez

Appellant, Glen Jones, challenges a take-nothing judgment in favor of appellee, Jimmy D. Hand. By four issues, Jones contends that the trial court included two improper jury questions in its jury charge, and the evidence is insufficient to support the jury's verdict. We affirm.[1]

---

[1] This case is before the Court on transfer from the Second Court of Appeals in Fort Worth pursuant

## I.   PERTINENT FACTS

Jones testified that he purchased property known as "Lot 7" in 1971 with a co-owner.[2]   Jones stated that in 1972, on property adjacent to "Lot 8" that he believed belonged to him, he built a pump house, "terraced the property," and stored his boat. According to Jones, no one disputed his right to use the pump house, terraces, or boat storage from 1972 until a dispute over the property with Hand arose.  Jones stated that he had used the pump house for over thirty years before the dispute arose.  When he built the pump house, Jones believed that he owned the property underneath it.

Jones testified that Hand had built a rock wall that Jones believed encroached on his property and that Hand threatened to extend the wall to prevent Jones from accessing the pump house.  Jones believed that the wall had negatively affected the fair market value of his property by about $15,000.  Jones stated that he was asking the jury to award him "the area around the pump house and where [he stored the] boat."

On cross-examination, Jones acknowledged that the survey admitted into evidence showed that the boundary between Lot 7 and Lot 8 went through the pump house.  Jones agreed that according to Hand's survey, the disputed property belonged to Hand.  Jones stated that the pump shed had not been functioning for approximately eighteen or twenty years.  Jones explained that he had moved the storage tank and pump out of the pump house at that time due to a flood and that the structure was an "empty building."  Jones still considered the structure an improvement to his property.

---

to an order issued by the Supreme Court of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).

[2] Jones purchased the co-owner's share of Lot 7 in 1976.

When Hand's attorney asked what improvements the county tax records showed, Jones stated that it did not show a couple of decks he considered improvements and it only showed "[t]he lot and residence." Hand's attorney asked, "So you're not being taxed on the improvements known as the pump house; is that correct," and Jones replied, "No, sir, that would be correct. Nor the—where I've terraced my lot, I don't guess they've taxed me on that either where I've built up rock work. I don't guess they're taxing me on that." Jones acknowledged that when he built the pump house, the terraces, and wood deck addition to the property, he did not inform the local taxing authority. Hand's attorney asked, "Have you ever gone to the Montague County Appraisal District and tell them that you are claiming some of [Hand's] property?" Jones responded, "I didn't know I was claiming any of his property, really." Jones testified that he was attempting to claim some of Hand's property through adverse possession. Hand's attorney asked, "And isn't that property that is below—immediately underneath the pump house?" Jones replied, "I would guess from this description on the—I think it would be west of the pump shed. West, on the southwest side of the property." Hand's attorney asked Jones to review his petition, and Jones complied. Hand's attorney then asked if the petition identified the property he was claiming by adverse possession by metes and bounds, and Jones said, "By metes and bounds, I don't believe it does, sir." Jones stated he did not have a survey of his property prior to building the pump house.

Hand testified that he purchased Lot 8 in 1988. Hand stated that he had discussed the pump house with Jones and that "it was fine" with him. Hand said, "[H]e could leave [the pump house] there or whatever." Hand clarified that he had not informed Jones that the pump house was on Hand's property. On cross-examination by his attorney, Hand

3

testified that he had "offered" to Jones the use of "the landing" located on Hand's property "any time he wanted to." Hand said that he also told Jones that Jones could use the boat dock located on Hand's property.

Eventually, Hand decided to construct a "rock wall" on the boundary of Lot 8 and Lot 7, in part, because Jones had been starting fires to clear brush on his land. Hand informed Jones of his intent to build the wall, and Jones was concerned because the property line "went right through, dead-center through [Jones's] pump house." However, when he was planning the wall, Hand told Jones that they could move the wall around Jones's pump house. When asked, "Did [Jones] ever assert a right to any of the property under the pump house even though he knew that it encroached upon your property," Hand responded, "No, sir." Hand denied that when he offered to move the rock wall around the pump house that he was "conceding any of his property" to Jones. Hand directed the contractor to "turn" the end of the rock wall so that it did not go through the pump house. Hand testified that Jones did not continuously use the pump house "from 1972 when he built that pump house until the time that [Hand] did [a] walk through of the property line prior to building" the rock wall. When asked if Jones had used the pump house after Hand built the rock wall, Hand replied, "No, sir." Hand testified that he had always paid the taxes on Lot 8 and that no one else had ever paid taxes on Lot 8.

## II. DIRECTED VERDICT

By his fourth issue, which we address first, Jones contends that he was entitled to a directed verdict. Specifically, Jones states that "[t]here was no evidence to oppose [his] adverse possession of the Area of Dispute, as demonstrated by the testimony and the Exhibits entered into evidence by both parties."

4

We review the denial of a motion for a directed verdict by a legal sufficiency standard of review. *McFarland v. Sanders*, 932 S.W.2d 640, 643 (Tex. App.—Tyler 1996, no writ). When a party with the burden of proof challenges the legal sufficiency of an adverse finding, we must determine whether the complaining party has demonstrated on appeal that the evidence conclusively established, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2011) (per curiam). Evidence is conclusive "only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Therefore, a judgment contrary to a jury verdict is proper only when the law does not allow reasonable jurors to decide otherwise.[3] *Id.* at 823.

To support his claim that he was entitled to a directed verdict, Jones points to "facts" that he claims were "undisputed" at trial, which include the following: (1) "That the structure (generally described as a 'pump house' in testimony) was constructed in 1972"; (2) "That not only was the structure placed and used in its current position, but that [Jones] also constructed retaining walls and stored his boat on that piece of property"; (3) "It must be noted that even [the Hands] own witnesses acknowledged (along with one of the surveyors), that there was evidence that the boat was still on the disputed tract after the year 2000"; (4) "That the structure remained in place, unchallenged by any third party, for the sixteen (16) years prior to the purchase of the adjacent tract by [Hand and his wife],

---

[3] In his brief, Jones does not state the elements of adverse possession or provide any authority supporting his bare assertion that the evidence is insufficient. Also, Jones has not explained the applicable standard of review in a case such as this—when the party with the burden of proof at trial challenges the legal sufficiency of the jury's finding that he did not prove the elements of his cause of action by a preponderance of the evidence.

and up to the date of filing of this cause"; and (5) "That [Jones] openly used, against any third party, the structure and storage area and used and repaired the retaining walls for over ten years prior to the purchase of the adjacent tract by [Hand]."[4] Jones neither explains how these facts entitled him to a directed verdict nor provides any citation to pertinent authority requiring this Court to reverse the judgment on the basis of insufficient evidence. *See* TEX. R. APP. P. 38.1(i); *see also Dow Chem. Co.*, 46 S.W.3d at 241 (establishing that we must determine whether Jones has demonstrated on appeal that the evidence establishes as a matter of law that he owned the property pursuant to adverse possession). Without any argument regarding the elements of adverse possession and how the above-quoted facts entitled Jones to a directed verdict, we cannot reverse the verdict without making Jones's argument for him. *See* TEX. R. APP. P. 38.1(i); *Ferguson v. DRG/Colony N., Ltd.*, 764 S.W.2d 874, 887 (Tex. App.—Austin 1989, writ denied) (explaining that when an appellant fails to provide argument that is sufficient to make an appellate complaint viable, the appellate court will not perform an independent review of the record and applicable law in order to determine whether the error complained of occurred).

Nonetheless, in order to determine that Jones owned the disputed property under adverse possession within the three-year statute of limitations, Jones must have conclusively established that he owned the property "under title or color of title." At trial, the evidence conclusively established that title to the disputed property belonged to Hand and no evidence was presented that Jones ever had title or color of title to the disputed property. To find that Jones owned the property by adverse possession under the five-

---

[4] Jones does not cite the record wherein these facts were presented at trial.

6

year statute of limitations, the jury had to find that Jones had paid "applicable taxes on the property each and every year; and . . . claim[ed] the property under a duly registered deed." Again, the only deed presented showed that Hand owned the disputed property. Jones did not claim he had ever paid taxes on the disputed property, and Hand presented evidence that he had paid the taxes. Therefore, the evidence does not conclusively establish, as a matter of law, that Jones adversely possessed the disputed property pursuant to the three or five-year statutes of limitations. *See Dow Chem. Co.*, 46 S.W.3d at 241.

Finally, regarding the ten-year statute of limitations for adverse possession, to be an actual and visible appropriation of the land, Jones had to conclusively establish that his possession of the land was "*unmistakably* an assertion of a claim of exclusive ownership in the occupant." *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 70 (Tex. 2011) (citing *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990) (quoting *Rick v. Grubbs*, 147 Tex. 267, 214 S.W.2d 925, 927 (1948); *McDonnold v. Weinacht*, 465 S.W.2d 136, 141 (Tex. 1971)). Here, Jones did not testify that he had ever excluded the previous owners from the disputed property or that he asserted exclusive ownership over it. And, although Jones testified that he did not ask the previous owner permission to build the pump house, the jury was free to disbelieve this bald assertion given that the previous owner did not testify and no other evidence regarding whether Jones had permission to build the pump house was presented. Based on the evidence presented, we cannot conclude that reasonable people could not differ in their conclusions regarding whether Jones asserted exclusive ownership over the disputed property. *See City of Keller*, 168 S.W.3d at 816; *Templeton v. Dreiss*, 961 S.W.2d 645, 669 (Tex. App.—San Antonio 1998,

7

writ denied) (providing that the exclusiveness of the claimant's possession is ordinarily a fact issue to be determined by a jury).

In addition, "mere occupancy of land without intention to appropriate is not hostile." *Tran v. Macha*, 213 S.W.3d 913, 915 (Tex. 2006) (per curiam). Here, there was evidence that Jones believed that the property at issue belonged to him and evidence supporting a finding that he did not intend to appropriate his neighbor's land. Therefore, based on the evidence presented, we cannot conclude that reasonable people could not differ in their conclusions regarding whether Jones merely occupied the land. *See Ellis v. Jansing*, 620 S.W.2d 569, 571–72 (Tex. 1981) (finding that there was no evidence of adverse possession where claimant's predecessor possessed strip of neighbor's property but "never claimed or intended to claim any property other than that described in his deed, or what he thought was contained in his deed, and he never intended to claim any property owned by the abutting property owners"). We overrule appellant's fourth issue.

### III. JURY CHARGE ERROR

By his first issue, Jones contends that "'notice' was improperly restricted by the Court's Charge" that stated, "'Adverse Possession' means an actual and visible appropriation of real property, commenced and continued under a claim of right, that is inconsistent with and is hostile in the claim of Jimmy D. Hand during the 3, 5, and/or 10-year period." Specifically, Jones argues that the instruction "failed to permit the jury to determine whether or not the three (3), five (5), or ten (10) year periods of limitations had started and/or been completed prior to 1988" when Hand purchased the property.

## A.     Standard of Review

We review the trial court's jury charge for an abuse of discretion. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990); *see also Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012) (applying and discussing the abuse of discretion standard of reviewing jury charge error). We may not reverse a judgment based on charge error unless the error is harmful. *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 749–50 (Tex. 1980). Error is harmful with relation to the jury charge only if it probably caused the rendition of an improper judgment. *Penrod v. Schecter*, 319 S.W.3d 737, 745 (Tex. App.—El Paso 2009, pet. denied) (citing Tex. R. App. P. 44.1; *Wal–Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 723 (Tex. 2003)).

## B.     Improper Definition of Adverse Possession

For purposes of this opinion, we will assume, without deciding, that the definition of adverse possession given in the court's jury charge is erroneous. Thus, the question before this Court is whether the error probably caused the rendition of an improper judgment.[5] *See id.* As stated above, there was no evidence that Jones ever had title, or color of title, to the disputed property or that Jones ever paid taxes on the disputed property.[6] Therefore, the complained-of definition could not have caused the rendition of an improper judgment regarding whether Jones acquired adverse possession of the property pursuant to the three or five year statutes of limitations.

---

[5] Jones does not explain how the error in the jury charge, if any, was harmful.

[6] The jury answered, "No" to the question, "Did Glen Jones, Plaintiff, have record title to the disputed property as identified?" Jones does not challenge the jury's finding that he did not have record title to the disputed property.

Regarding the ten-year statute of limitations, the jury, as explained above, may not have found that Jones exhibited exclusive possession of the disputed property. Thus, the complained-of definition could not have caused the rendition of an improper judgment regarding whether Jones acquired adverse possession of the property pursuant to the ten year statute of limitations. We overrule Jones's first issue.

## C. Instruction on Encroachments

By his second issue, Jones contends that the trial court erroneously gave the jury an instruction on the affirmative defense of encroachments because Hand failed to plead it. Hand counters that although not pled, the issue of encroachments was tried by consent; therefore, the trial court did not err in including the instruction in the jury charge.

Even assuming, without deciding, that the trial court erred in including the definition of encroachments in the jury charge, we cannot conclude that it caused the rendition of an improper judgment.[7] See *Penrod*, 319 S.W.3d at 745. This is so because there was no evidence that Jones ever had title, or color of title, to the disputed property, there was no evidence that Jones ever paid taxes on the disputed property, the jury could have reasonably found that Jones had not claimed "exclusive ownership" of the disputed land until Hand built the rock wall, and the jury could have reasonably found that Jones's possession of the disputed property was not hostile because he merely occupied the land without more. We overrule Jones's second issue.

## IV. ATTORNEY'S FEES

By his third issue, Jones contends that the trial court improperly awarded attorney's fees to Hand's trial counsel. Specifically, Jones argues that Hand's attorney failed to

---

[7] Jones does not explain how the error, if any, was harmful.

10

testify that his attorney's fees were "reasonable and necessary." Jones has not provided a clear and concise argument with citation to authority regarding his attorney's fees issues. Thus, we are unable to reverse on this basis.[8] *See* TEX. R. APP. P. 38.1(i); *Ferguson*, 764 S.W.2d at 887. We overrule Jones's third issue.

## V. CONCLUSION

We affirm the judgment.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
13th day of March, 2014.

---

[8] There are several factors that the jury must consider when determining whether attorney's fees are reasonable and necessary. Those factors include the following: (1) "the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly"; (2) "the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer"; (3) "the fee customarily charged in the locality for similar legal services"; (4) "the amount involved and the results obtained"; (5) "the time limitations imposed by the client or by the circumstances"; (6) "the nature and length of the professional relationship with the client"; (7) "the experience, reputation, and ability of the lawyer or lawyers performing the services"; and (8) "whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered." *O and B Farms, Inc. v. Black*, 300 S.W.3d 418, 423 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Jones has neither cited these factors nor argued that Hand's trial attorney failed to address these factors. Moreover, upon our review of the record, although Hand's attorney did not specifically state that the attorney's fees were "necessary and reasonable," he did explain in detail his hourly rate, why he was entitled to charge that rate per hour, what he did in the case, why he did it, and the required amount of hours he expended on each required task. *See id.* Hand's trial counsel also testified regarding his experience and ability, the novelty of the issues involved in the case, and the fee customarily charged in the locality for similar legal services. *See id.*

11