Clinton MANGES, Appellant,

v.

J. C. GUERRA, et al., Appellees.

No. 6199.

Court of Civil Appeals of Texas, Waco.

July 16, 1981.

Rehearing Denied Sept. 4, 1981.

Royal D. Adams, Adams & Hunter, San Antonio, Daniel & Daniel, Liberty, Luther E. Jones, Jr., Corpus Christi, Murray Watson, Jr., Watson & Hix, Waco, for appellant.

Lloyd Lochridge, McGinnis, Lochridge & Kilgore, Austin, T. Kellis Dibrell, Dibrell, Dotson, Dibrell & Dibrell, San Antonio, Garland F. Smith, Smith, McIlheran, Lauderdale & Jones, Weslaco, H. P. Guerra, III, Pope, Pope & Guerrero, Rio Grande City, David H. Guerra, Flores, Sanchez, Vidaurri, Munds & Guerra, McAllen, Rufus Wallingford, Fulbright & Jaworski, Houston, for appellees.

## OPINION

JAMES, Justice.

This is a suit to remove a cloud from the title to an interest in certain lands located in Jim Hogg County and Starr County, Texas, and for damages resulting from inability to lease such estate as a result of the cloud. Plaintiff-Appellee J. C. Guerra originally brought this suit against the Defendant-Appellant Clinton Manges, Defendant Gas Producing Enterprises, Inc. (hereinafter called "GPE") and Defendant Bank of the Southwest National Association. Joined as involuntary Plaintiffs were V. H. Guerra, M. A. Guerra, Ruben R. Guerra, H. P. Guerra, Jr., Garland F. Smith, Trustee, Louise T. Guerra, David Guerra, Virginia G. Jeffries and husband, James A. Jeffries, Gladys Guerra, Individually and as Executrix of the Estate of M. Guerra, Jr., Deceased, Maria Evangelina Guerra, Maria Del M. Guerra, Mary Frances Romero Tubbs, Gaynell Louise Romero Fox, Jeannine Marie Romero Richard, A. V. Margo, Independent Executor of the Estate of G. A. Guerra, Deceased, and Stanley Keylon. After trial before a jury, judgment was rendered (1) removing Manges as holder of the executive rights to the plaintiffs' mineral interests; (2) cancelling the Manges to Manges lease as of the date of its execution (April 20, 1977); (3) adjudging Manges to be a drilling and producing cotenant with the plaintiffs in three producing wells and two dry holes drilled by him; (4) requiring an accounting by Manges of income from production from the producing wells, less necessary and reasonable costs of drilling and producing; (5) awarding the plaintiffs actual damages against Manges of $382,-608.79 plus $500,000.00 exemplary damages; (6) adjudging the Bank of the Southwest Association deed of trust to be of no force or effect insofar as it purports to cover plaintiffs' mineral interests and executive rights; and (7) cancelling the two GPE contracts insofar as they purport to cover plaintiffs' mineral interests and executive rights.

Manges brings this appeal from the trial court's judgment. Gas Producing Enterprises appealed separately, but its appeal has been voluntarily dismissed.

The M. Guerra & Son Partnership lands (MGS lands) consist of some 72,000 surface acres and an estimated 55,000 to 60,000 mineral acres in Starr and Jim Hogg Counties. The Virginia C. Guerra lands (VCG lands) lying in Starr County, consist of 21,-000 surface acres and an estimated 15,000 to 18,000 mineral acres.

On March 31, 1969, the Defendant Clinton Manges, entered into a contract to purchase the MGS lands from the M. Guerra & Son Partnership for $3,575,000.00. Included in the contract and conveyance to Manges were the 72,000 surface acres and one-half of the minerals, together with the executive rights to execute oil, gas and mineral leases on the remaining half of the minerals, without the joinder of the owners but with their receipt of half of any lease bonus, rentals and royalties. Controversies developed among the Guerra heirs, and between such heirs and Clinton Manges, which led to litigation and finally a receivership in 1971. See *M. Guerra & Son v. Manges*, 442 S.W.2d 441 (Tex.Civ.App. Waco, 1969, writ dism'd).

The receiver executed a deed August 20, 1971 conveying certain properties to Manges consisting of all the surface acres, except town lots and certain surface acres set aside to R. R., Virgil H., and H. P. Guerra, Jr., and consisting of 53.41625% of the minerals in such lands. The litigation, however, continued until June 11, 1974, when an agreed judgment was entered in Cause Number 3953 in the 229th District Court of Starr County confirming the receiver's deed to Manges and settling the Guerra and Manges accounts. The judgment further adjudged to the Guerras one-half of all bonuses, delay rentals, royalties, overriding royalties and payments out of production to be paid under any lease on the premises; that Manges would hold the executive right to lease the Guerras' 46.58375% interest in the minerals, but that any lease of the premises should provide for a minimum royalty of ⅛th.

One-seventh of the VCG lands was purchased by Manges through the M. Guerra & Son Partnership which had purchased the interest of J. J. Guerra. The remaining six-sevenths were purchased by Manges from Virginia C. Guerra's other heirs and successors in 1968 and 1970. Only the title to the one-seventh interest acquired from the partnership is claimed to have been clouded. All the separate deeds to Manges conveyed the surface, one-half of the minerals and the executive leasing rights on all the minerals with one-half bonus, rentals and royalties being reserved to Grantors.

On May 10, 1974, a month before the agreed judgment was rendered, Manges, his wife, and Duval County Ranch Company (DCRC) executed to Herbert F. Poyner, Jr., trustee, a Deed of Trust, Assignment and Security Agreement to secure Bank of the Southwest National Association in the payment of a note in the principal amount of $7,028,346.00. The deed of trust conveyed to the Bank as security "all of oil, gas and other mineral interests . . . including executive rights and powers" owned or claimed by Manges and affecting lands in Starr and Jim Hogg Counties.

On September 11, 1974, Manges, his wife, and DCRC joined in the execution of two instruments to Gas Producing Enterprises (GPE). One of the instruments was an "Option Contract" and the other was a "Repayment Agreement, Collateral Assignment and Security Agreement." These instruments included the above described properties along with properties in a total of 13 Texas Counties. Plaintiff-Appellees contend that the arrangement factually and legally withdrew the Guerra minerals from the market for leases to third parties. The arrangement involved a beginning loan of $2,800,000.00 (later increased to $5,000,-000.00) to Manges by GPE to be used by Manges in drilling and developing minerals owned by him in some 13 counties, with no provision for bonus or delay rentals for the Guerras, and no obligation to drill or develop the minerals on the Guerra lands and gave GPE an option to buy oil, gas and other hydrocarbons produced from said lands. The Guerras had no income from leasing of any lands controlled by Manges' leasing rights from the date of his initiation of Cause No. 3953 in 1968 to date of trial in February 1979. For seven years, the GPE contracts tied up the Guerra lands with no bonuses or delay rentals for the Guerras.

A new round of litigation began December 6, 1974, in a suit by Manges in Starr County against Ruben Guerra to invalidate a lease in which suit Ruben and other Guerras filed a cross-action. Manges took a nonsuit in the Starr County suit. Cove Investments, Inc. intervened, asserting an interest in any interest owned by Manges in the Guerra lands and minerals.

On September 19, 1975, J. C. Guerra filed this suit in Jim Hogg County against Manges, GPE, and Bank of the Southwest Association. On the same day R. R. Guerra filed a similar suit as a cross-action in Starr County, Texas, and immediately filed a Notice of Lis Pendens. In that same suit, Cove Investments, Inc. as Intervenor, claimed title to all, or alternatively one-half, of the minerals and executory rights owned by Manges as to the lands involved in this suit and filed a Lis Pendens notice of that claim on the day this suit was filed.

Plaintiff J. C. Guerra later, on January 23, 1979, filed his Second Amended Petition in which he made Cove Investments, Inc. a defendant and all other Guerra owners involuntary plaintiffs.

After this suit was filed, Manges discovered that there were offset wells of Exxon draining part of the property. Manges, claiming that he was unable to lease to anyone else because of the Lis Pendens notices, leased 25,911 acres to himself on April 20, 1977. Purporting to act under such lease, Manges drilled five offset wells, three of which were producing, and at the time of trial had produced over $2,000,-000.00 held in suspense. He also entered into a farm-out agreement on July 16, 1977, with Joe Schero under which sixteen to eighteen other wells were drilled. On the same day, July 16, 1977, Manges purportedly gave to Schero a top lease. Such top lease was not filed for record until February 5, 1979, the date this case went to trial. Plaintiffs assert that this top lease was a sham and reflects further the total bad faith of Manges and Schero in that with full knowledge of Manges' nonpayment and other mistreatment of the other interest owners the parties contracted that any funds accruing to them should be paid to Manges.

Subsequent in time to the farm-out agreement of July 16, 1977, the Guerra parties took a nonsuit in the Starr County suit filed December 6, 1974, and joined the other involuntary Guerra plaintiffs. Summary judgment was granted to Manges against Cove Investments, Inc., in the Starr County suit, and the claim asserted by Cove in this Jim Hogg County case against Manges was severed and docketed as a separate cause. Subsequently, the summary judgment against Cove was reversed and the cause remanded to the trial court for trial on the merits. See *Cove Investments, Inc. v. Manges, et al.*, 602 S.W.2d 512 (Tex. 1980).

In the meantime, this case went to trial February 5, 1979, in Jim Hogg County. The case was tried to a jury on special issues. Based on the jury's answers to Special Issues Nos. 1, 2, 3, 4 and 4a, Plaintiffs contend they were probably entitled to rescind the conveyance to Manges of any interest in the Guerra lands and minerals, but they expressly waived such right, if any they had. Plaintiffs then moved for judgment on the basis of the jury's answers to the remaining issues.

The pertinent findings made by the jury are as follows:

1. The Plaintiffs Guerra and Defendant Manges understood and agreed at the time the judgment of June 11, 1974 was entered that Defendant Manges would comply with the requirements imposed upon him as set out in Instruction 2 of the charge.

In this connection, "Instruction 2" of the court's charge reads as follows:

"2A. 'Executive Right' as used in this charge means the exclusive right or power to make and execute, without the joinder of co-mineral owners of the mineral estates in question, all leases, permits, unitization and pooling agreements and division orders therefor, for the exploration for and production of oil, gas, and other minerals.

"2B. You are instructed that the possessor of an 'Executive Right' as herein defined owes to the co-mineral owners the same degree of diligence and discretion in exercising the rights and powers granted under such Executive Rights as would be expected of the average landowner who because of self-interest is normally willing to take affirmative steps to seek or to cooperate with prospective lessees."

2. At the time the judgment of June 11, 1974 was entered Defendant Manges, without communicating such intention to the Plaintiffs Guerra, had the secret intention of not in fact leasing the Guerra mineral estates to third persons or parties, but in fact intended to develop the Guerra lands for minerals himself.

3. The Plaintiffs Guerra would not have agreed to the entry of the judgment of June 11, 1974, if they had known that Defendant Manges then had the intention of not leasing the Guerra mineral estates to third person or parties, but in fact intended

to develop the Guerra lands for minerals himself.

4. At the time Plaintiffs Guerra conveyed and assigned their executive rights to the minerals under the V. C. Guerra estate lands, Defendant Manges, without communicating such intentions to the Plaintiffs Guerra, had a secret intention of not in fact leasing the V. C. Guerra mineral estate to third persons or parties, but in fact intended to develop said V. C. Guerra lands for minerals himself.

4a. The Plaintiffs Guerra would not have conveyed and assigned their executive rights to the minerals underlying the V. C. Guerra estate lands if they had known that Defendant Manges had the intention of not leasing the Guerra mineral estates to third persons or parties, but in fact intended to develop the Guerra lands for minerals himself.

5. After June 11, 1974, the Guerra lands, exclusive of the minerals in the Manges to Manges lease, could have been leased to third persons or parties in the reasonable exercise of diligence and discretion as required of a possessor of an "Executive Right" under the standards set out in Instruction 2B of the charge.

6. Manges could have extracted $800,000.00 in Bonuses and $120,000.00 in Delay Rentals from a disinterested third party under leases which could have been executed as found in Special Issue No. 5.

7. Manges could have extracted $35.00 (per acre) in Bonus and $5.00 (per acre) in Delay Rentals from a disinterested third party under lease or leases given to such disinterested party on minerals now covered by the Manges to Manges lease.

7a. Manges could have extracted a ⅙ royalty from a disinterested third party under lease or leases given to such disinterested party on minerals now covered by the Manges to Manges lease.

8. Defendant Manges materially and adversely affected the rights and interest of the Plaintiffs Guerra in wilful disregard of their rights and interests in the following ways:

a) the execution by Defendant Manges in favor of Gas Producing Enterprises of an option to purchase gas, etc., contract and of a security agreement to said Defendant.

b) the execution by Defendant Manges in favor of Defendant Bank of the Southwest of a Deed of Trust pledging Executive Rights held by Defendant Manges as security therein.

c) execution by Manges to Manges himself of a mineral lease in and to the San Roman area minerals.

d) failure to negotiate for mineral leases with third persons in accordance with duties imposed upon said Defendant as set out under Instruction 2B of the charge.

e) in his dealings with Joe Schero.

9. Defendant Manges failed, materially and adversely to the interest of the Plaintiffs Guerra, to discharge the obligations owed to Plaintiffs Guerra in the exercise by Defendant Manges of the Executive Rights he possessed in and to the Guerra mineral interests.

10. Such actions were in wilful and unconscionable disregard of the rights and interests of Plaintiffs Guerra, which conduct may be called malicious or wanton.

11. $500,000.00 should be awarded to the Plaintiffs as exemplary damages against the Defendant Clinton Manges.

14. The parties intended that the executive rights held by Manges were not to be transferable nor assignable.

Based on the answers to these issues, the trial court rendered judgment (1) removing Manges as holder of the executive rights to the Plaintiffs' mineral interests; (2) cancelling the Manges to Manges lease as of the date of its execution (April 20, 1977); (3) adjudging Manges to be a drilling and producing cotenant with the Plaintiffs in three producing wells and two dry holes drilled by him; (4) requiring an accounting by Manges of income from production from the producing wells, less necessary and reasonable costs of drilling and production; (5) awarding the Plaintiffs actual damages against

Manges of $382,608.79 plus $500,000.00 exemplary damages; (6) adjudging the Bank of the Southwest National Association deed of trust to be of no force or effect insofar as it purports to cover Plaintiffs' mineral interests and executive rights; and (7) cancelling the two GPE contracts insofar as they purport to cover Plaintiffs' mineral interests and executive rights.

Appellant comes to this Court upon seventeen points of error which may be conveniently grouped under six basic contentions as follows:

(1) The trial court erred in rendering judgment removing Defendant-Appellant Manges as holder of the executive rights to the mineral interests of the Guerras, for the asserted reasons: (A) executive rights are not severable from the conveyance to Manges of executive rights, surface and mineral interests; (B) no part of the consideration paid by Manges therefor has been returned to him; (C) Plaintiffs waived any equitable cause of action for rescission or cancellation when they elected instead to take damages for Manges's alleged failure to properly exercise the executive rights; (D) no pleadings, findings or evidence support rescission or cancellation of Manges's executive rights.

(2) The trial court erred in awarding Plaintiffs actual damages for lost bonus because there are no controlling special issues in support thereof, and the evidence is legally and factually insufficient to support any such findings.

(3) The trial court erred in awarding exemplary damages because the evidence is legally and factually insufficient to support same, and for the further reasons that exemplary damages are not permitted in the absence of actual damages, and moreover because findings of a breach of contract will not support an award of exemplary damages.

(4) The trial court erred in cancelling the Manges lease to himself because: (A) such action was not supported by any jury finding, and (B) it was error to cancel the lease instead of reforming it.

(5) The trial court erred in adjudicating a (Mineral estate) co-tenancy relationship between Manges and the Guerras, and in ordering Manges to account to the Guerras for production covering any period of time, and more especially as to any time prior to final judgment herein.

(6) The trial court erred in entering judgment in the absence of two allegedly indispensable parties, to wit, Joe Schero and Cove Investments, Inc.

We have carefully examined all of the points and contentions set forth by Appellant and overrule all of same as being without merit.

We revert to Appellant's first contention, wherein he argues that the trial court erred in rendering judgment removing Manges as holder of the executive rights to the Guerras' mineral interests, because (he says) the executive rights are not severable from the conveyances to Manges which included surface, minerals, and executive rights, and that no part of the consideration paid by Manges for such conveyances has been returned to him. As we understand it, Appellant is contending that the trial court's judgment effected a partial "rescission" of the conveyance wherein Manges was invested with title to the surface and minerals described therein, and became the holder of executive rights to act in behalf of the Guerras. In our opinion, this was not what happened at all. The trial court did not effectuate a partial "rescission", but instead only made a "cancellation" of the executive rights held by Manges, effective as of the date of the trial court's judgment.

We recognize that our Texas courts often use the terms "rescission" and "cancellation" interchangeably; however, in a case such as the one now before us, the difference between the two becomes important. In *Fireman's Fund American Insurance Co. v. Escobedo* (1978) 80 Cal.App.3d 610, 145 Cal.Rptr. 785, at page 789, the court uses the following language to express the distinction between "cancellation" and "rescission":

■ "Cancellation and rescission are not synonymous. One is prospective, while the other is retroactive. As stated in *Mamula v. McCulloch* (1969) 275 Cal.App.2d 184, 197, 79 Cal.Rptr. 571, 578: 'To cancel a contract means to abrogate so much of it as remains unperformed. It differs from rescission, which means to restore the parties to their former position. The one refers to the state of things at the time of the cancellation; the other to the state of things existing when the contract was made.'" Also see Black's Law Dictionary, 5th Ed., p. 1174 for definition of "rescission," and p. 187 for definition of "cancellation."

■ In other words, the trial court did not rescind the deed or deeds in question at all, but only cancelled the future exercise by Manges of the executive rights which he had theretofore held. This action of removing Manges as a holder of executive rights is analogous to a court's removal of a trustee for breach of fiduciary duties. See *Republic Nat. Bank & Trust Co. v. Bruce* (Tex.1937) 130 Tex. 136, 105 S.W.2d 882, 885; *Brault v. Bigham* (Waco CA 1973) 493 S.W.2d 576, NRE.

The term "executive rights," as pertains to mineral leases, has been defined as "the exclusive right to make a lease." *Campbell v. Dreier* (San Antonio CA 1964) 382 S.W.2d 179, NRE.

Our Supreme Court in *Schlittler v. Smith* (Tex.1937) 128 Tex. 628, 101 S.W.2d 543 at page 545 has declared that the holder of executive rights is charged with the responsibility of "utmost fair dealing" in the performance of his duties towards the people for whom he acts. This doctrine of "utmost fair dealing" has been expressed and applied in *Morriss v. First Nat. Bank of Mission* (San Antonio CA 1952) 249 S.W.2d 269, NRE (wherein the term "utmost good faith" is used); *First Nat. Bank of Snyder v. Evans* (Eastland CA 1943) 169 S.W.2d 754, writ refused (wherein the term "relation of trust" is used); *Portwood v. Buckalew* (Tyler CA 1975) 521 S.W.2d 904, NRE (wherein at page 916 the court said the standard of conduct of the executive must be measured by that of an ordinary prudent surface owner in the exercise of a high degree of care); *Kimsey v. Fore* (Beaumont CA 1979) 593 S.W.2d 107, NRE (wherein the court at page 111 held that "We are satisfied that the test of utmost fair dealing is an implied covenant arising from the royalty deed which is imposed upon the owners of the executive right to lease.")

This record contains ample evidence, and the jury so found, that Defendant-Appellant Manges breached his duty of "utmost fair dealing" toward the Guerras in several different respects over a period of years, to the end that the Guerras were deprived of income justly due them from their mineral interests over which Manges held the executive rights. As we see it, the basic issue in this case is this: Can a joint owner of the mineral estate in lands, holding the executive rights to lease the interests of his cotenants and owing them a duty of utmost fair dealing, wilfully use his trust in his own private interest and in unconscionable disregard of the interests of the other joint owners, continue to hold and exercise the executive rights to the entire mineral estate? We think not.

Taking into account the evidence in this record and the jury findings made, the trial court was amply justified in cancelling Appellant's executive rights and removing him therefrom. Since the executive rights were cancelled as of the date of the trial court's judgment, and thenceforward, the Plaintiff-Appellees were entitled to recover their actual and exemplary damages as found by the jury prior and down to the trial court's judgment. In other words, there is no overlapping of remedies here. In our opinion, the pleadings, evidence, and jury findings amply support the trial court's cancellation of Manges's executive rights.

■ Appellant next contends the trial court erred in awarding Plaintiff-Appellees actual damages for lost bonus, asserting there are no controlling issues in support thereof, and the evidence is legally and factually insufficient to support any such findings. We do not agree. In this connection, the jury found in answer to Special Issue No. 5 that after June 11, 1974, any of

the Guerra lands, exclusive of the minerals in the Manges to Manges lease, could have been leased (by Manges) to third persons or parties in the exercise of diligence and discretion as required of a possessor of "executive rights" under the standards set out in the court's instructions. In answer to Special Issue No. 6, the jury found that Manges could have extracted from a disinterested third party under leases which could have been executed, the sum of $800,000.00 in bonus and $120,000.00 in delay rentals. Based upon the jury's answer to Special Issues 5 and 6, and applying the proportionate fraction of the minerals rights owned by the Guerras to the whole, the trial court entered the sum of $382,608.79 as actual damages due the Guerras from Manges for lost bonus. The evidence in this record is ample to support this award of actual damages for lost bonus. First, there is no question but that the entire acreage could have been leased, had Manges refrained from doing the things he did. By entering into the two contracts with GPE and by mortgaging the executive rights, among other things, to the Bank of the Southwest National Association, Manges in effect took the entire acreage off the market. Finally, on April 20, 1977, Manges leased 25,911 acres of the Guerra lands to himself as lessee, thereby removing this part of the Guerra lands from the market.

The evidence showed that Ruben R. Guerra exercised his executive right as to 8,367 acres for $25.00 per acre bonus, ⅛th royalty, and a 5 year primary term to C. Neil Johnson on August 15, 1974. Ruben Guerra's lessee, C. Neil Johnson, tried in vain to induce Manges to negotiate with him concerning the leasing of the remaining Guerra lands, and he (Johnson) testified to a going price of $25.00 to $30.00 per acre bonus for such land.

In 1976 Expando Oil Co. sought to lease from Manges about 1,000 acres located near the center of the perimeter embracing the Guerra lands for $25.00 per acre bonus, ⅛th royalty, $2.00 per acre per year delay rental, and a 3 year primary term. Manges ignored this offer as well.

James Moyer, a geologist, testified that some of the Guerra lands would bring as much as $100.00 per acre bonus, or an across-the-board bonus of $20.00 to $25.00 per acre, with ⅛th royalty.

When we consider that the entire 32,000 mineral acres belonging to the Guerras could have been leased, and that there is plenty of evidence that it would lease for $25.00 per acre bonus, the jury's figure of $800,000.00 for lost bonus was well within the range of the testimony. We therefore hold that the special issues were properly submitted, and the evidence is legally and factually sufficient to support the trial court's award of $382,608.79 actual damages to Plaintiff-Appellees.

■ Next, Appellant Manges contends the trial court erred in awarding the Guerras $500,000.00 exemplary damages because there was no evidence and insufficient evidence to support the jury's findings in connection therewith. Appellant further asserts that such was error because exemplary damages are not permitted in the absence of actual damages, and further, that a breach of contract will not support an award of exemplary damages. We overrule these contentions. In the first place the exemplary damages were not based upon Manges's breach of contract, but instead upon his breach of good faith in the exercise of his executive rights. In answer to Special Issues 8, 9, and 10, the jury found that Manges's actions materially and adversely affected the rights and interests of the Guerras in five separate and distinct particulars, and moreover that such actions on the part of Manges were in wilful and unconscionable disregard of the rights and interests of the Guerras, in such a manner that Manges's conduct might be called malicious and wanton. Finally, in answer to Special Issue No. 11, the jury found exemplary damages in the amount of $500,000.00.

Without further detailing the evidence, suffice it to say that the evidence in this record is legally and factually sufficient to support these jury findings.

Appellant next asserts the trial court erred in cancelling the lease by Manges of 25,911 acres of the Guerra lands to himself as lessee. On April 20, 1977, Manges leased 25,911 acres to himself as lessee, as hereinbefore pointed out in this opinion. Purporting to act under such lease, Manges drilled five wells as offsets to Exxon's wells on an adjoining tract, three of which five wells were producing wells, and at the time of trial such wells had produced over $2,000,000.00 held in suspense. Manges claimed that he had the right to lease to himself so long as he did so "at arm's length"; that since there was no jury finding that the lease was not fair, the trial court's cancellation of the Manges-to-Manges lease was improper because it was not supported by any jury finding. We do not agree.

We have already discussed the jury's answers to Special Issues Nos. 8, 9, and 10, which we believe fully support the trial court's cancellation of Manges's lease to himself.

We are unable to understand how anyone could make a lease to himself "at arm's length." The duty of the "utmost fair dealing" doctrine enunciated by our Supreme Court and other Texas courts is predicated upon the holder of executive rights securing the best deal possible from third parties for the people whom he represents, just as self-interest would dictate that he secure the best deal possible for his own mineral rights. In other words, we believe that the concept of leasing to one's self is incompatible with the "utmost fair dealing" doctrine. We further believe that such leasing by the executive to himself smacks of fraud on its face. For these reasons, and based upon the jury's answers to Special Issues 8, 9, and 10, and the evidence in support thereof, we are of the opinion and hold that the trial court acted properly in cancelling the Manges lease to himself as of the date of its execution, to wit, as of April 20, 1977.

We have carefully examined all of the remaining points and contentions of Appellant, and hereby overrule same as being without merit.

Judgment of the trial court is affirmed.

AFFIRMED.