GOLDBLATT-final 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-122-CV





DAVID GOLDBLATT,



 APPELLANT


vs.





WILLIAM A. WALKER, CLYDE R. DANKS, GEORGE R. BROWN,


GARY W. WILLIAMSON, AND CENTRAL TEXAS IMAGING ASSOCIATES, INC.,



 APPELLEES



 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT



NO. 488,157, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING


 




 David Goldblatt appeals from the trial court's judgment declaring a stock
subscription agreement rescinded; declaring appellees William A. Walker, Clyde R. Danks,
George R. Brown, and Gary W. Williamson, as assignees of Central Texas Imaging Associates,
Inc. ("Central Texas Imaging"), the proper owners of 4,444 shares of Central Texas Imaging
stock; and awarding attorney's fees to appellees. We will affirm the judgment of the trial court.



BACKGROUND


 Goldblatt is a radiologist who was employed by Capital Radiology Association
("Capital Radiology"). Solely because of his employment with Capital Radiology, in June 1989,
Goldblatt was offered the opportunity to become a shareholder in Central Texas Imaging, a new
corporation created in connection with the financial reorganization of Capital Radiology. 
Goldblatt was offered 4,444 shares of stock at one dollar per share.

 Central Texas Imaging was to be organized and jointly owned by Goldblatt and
other doctor-investors. The attorneys for the proposed corporation prepared all of the necessary
corporate papers, which included certain specific restrictions on ownership and buy-out provisions
in the event one of the stockholders left employment with Capital Radiology.

 Goldblatt signed the signature page associated with the proposed subscription
agreement and stock restriction agreement (the "first agreement"), returned the signature page,
and tendered the required 4,444 payment. Subsequently, several of the potential stockholders
objected to certain terms in the proposed restrictions, and the stock restriction agreement was later
renegotiated and its terms changed.

 The second proposed stock restriction agreement (the "second agreement") was
circulated to all of the Capital Radiology doctors. The record is unclear whether all of the
doctors, including Goldblatt, were aware that there had been more than one proposed agreement.

 The second agreement modified certain restrictions and buy-out provisions. The
primary difference between the two agreements was the method of calculating the stock by-out
price; the multiple to be applied to the corporation's previous year's distributions was increased
in the second agreement. If at the occurrence of an "event of sale," as in this case, the
corporation had not existed for a year or the previous year's distributions were zero, the buy-out
price would be the contribution price of one dollar per share. It is undisputed that, under the buy-out terms of either agreement, Goldblatt would be entitled to only his contribution of $4,444 in
exchange for his stock.

 After the signature pages were returned to Capital Radiology office personnel, the
signature pages were forwarded to the attorney for Central Texas Imaging, who completed the
paperwork and issued the stock certificates but did not deliver them. Central Texas Imaging's
attorney and the appellees believed that all the doctors had knowledge of and ratified the second
agreement.

 Subsequently, Goldblatt became dissatisfied with his position with Capital
Radiology. On November 30, l989, he gave notice of his intention to resign effective March 1,
1990. On December 14, 1989, Walker, as president of Central Texas Imaging and Peter Werner,
as secretary, sent Goldblatt a letter stating that (1) Central Texas Imaging would take notice of
his resignation effective March 1, l990, (2) Goldblatt's resignation was an "event of sale" under
the stock restriction agreement, and (3) Goldblatt should plan to receive payment in the amount
of the original tender in accordance with the stock restriction agreement.

 Whether Central Texas Imaging's notice of its election to buy out Goldblatt's stock
was timely under the terms of the agreements is disputed. On May 21, l990, appellees tendered
payment, which Goldblatt rejected. Central Texas Imaging then canceled Goldblatt's stock
certificates and reissued the shares to Walker, Danks, Brown, and Williamson. Goldblatt is now
employed with a major competitor of Capital Radiology.

 Appellees filed suit seeking enforcement of either of the agreements or,
alternatively, rescission of the entire stock-purchase transaction. Appellees also requested
declarations to determine the validity of the stock restriction agreement and to estop Goldblatt
from challenging the agreement.

 In his pleadings, Goldblatt contended that appellees had waived their rights under
the stock restriction agreement or, alternatively, that he was not bound by either stock restriction
agreement. Goldblatt also specifically challenged rescission and partial rescission as inappropriate
remedies. Goldblatt counterclaimed seeking damages for conversion, breach of fiduciary duty,
constructive fraud, breach of contract, tortious interference, conspiracy, and constructive trust. 
Finally, Goldblatt asked the court to declare that he owned the 4,444 shares of stock and that the
stock was now unrestricted by the terms of the stock restriction agreement. Both sides requested
an award of attorney's fees.

 Rather than enforce either of the agreements, the trial court concluded that the
agreement was entered into under a mutual mistake of fact and, therefore, the transaction should
be "avoided, rescinded, set aside" and have no effect. The trial court declared that the stock
subscription agreement was rescinded and that Walker, Danks, Brown, and Williamson were the
proper owners of the stock. The trial court ordered the appellees to return Goldblatt's original
tender of $4,444 plus interest and awarded appellees attorney's fees.

 Goldblatt raises seventeen points of error. He challenges the rescission, the award
of attorney's fees, and the denial of recovery on his counterclaims.



DISCUSSION AND HOLDING


Rescission


 Goldblatt's points of error three through ten allege error in the trial court's
judgment declaring the stock subscription agreement rescinded. Goldblatt asserts that (1) the
evidence was legally and factually insufficient to support rescission; (2) appellees' negligence in
causing the mutual mistake barred rescission; (3) rescission was not proper because appellees had
an adequate remedy at law; (4) appellees' ratification of the agreement barred rescission; (5) the
doctrines of unclean hands and laches also barred rescission; (6) rescission was inconsistent with
the declaration that appellees owned the stock; and (7) the evidence was legally and factually
insufficient to show appellees timely executed their buy-out option.

 The trial court issued original and additional findings of fact and conclusions of
law. We attach to findings of fact the same weight that we attach to a jury's verdict upon jury
questions. City of Clute v. City of Lake Jackson, 559 S.W.2d 391, 395 (Tex. Civ. App.--Houston
[14th Dist.] 1977, writ ref'd n.r.e.). Findings of fact are reviewable for legal and factual
sufficiency of the evidence by the same standards used to review jury findings. Okon v. Levy, 612
S.W.2d 938, 941 (Tex. Civ. App.--Dallas 1981, writ ref'd n.r.e.).

 In his seventh point of error, Goldblatt contends the evidence is legally and
factually insufficient to support the equitable remedy of rescission. The trial court rescinded the
stock subscription agreement based on its conclusion that the stock restriction agreement was a
material part of the subscription agreement and that a "mutual mistake" negated a meeting of the
minds with regard to the terms of the stock restriction agreement.

 Courts may avoid an agreement where both parties believe in the existence of a
present, material fact that does not exist and where both parties labor under the same
misconception. A.L.G. Enters. v. Huffman, 660 S.W.2d 603, 606 (Tex. App.--Corpus Christi
1983), aff'd as reformed, 672 S.W.2d 230 (Tex. 1984). The question of mutual mistake is
determined not by self-serving subjective statements of the parties' intent, but rather solely by
objective circumstances surrounding execution of the agreement, such as the knowledge of the
parties at the time of signing, the amount of consideration paid, and the extent of negotiations and
discussions. Williams v. Glash, 789 S.W.2d 261, 264 (Tex. 1990). The mistake must not be the
result of the negligence of one of the parties. The equitable remedy of rescission should not be
granted if an adequate remedy at law exists. McNutt v. Intratex Gas Co., 600 S.W.2d 947, 949
(Tex. Civ. App.--Waco 1980, writ ref'd n.r.e.).

 An appellant who challenges the legal sufficiency of the evidence supporting an
issue upon which it did not have the burden of proof must demonstrate that there is no evidence
to support the adverse finding. Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co, 766 S.W.2d
264, 275 (Tex. App.--Amarillo 1988, writ denied). In reviewing a no-evidence point, we consider
only the evidence supporting the finding and disregard all evidence to the contrary. Best v. Ryan
Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990). If there is more than a "scintilla" of
evidence supporting the finding, we must overrule the point and uphold the finding.

 When challenging the factual sufficiency of the evidence supporting an adverse
finding upon which it did not have the burden of proof, an appellant must demonstrate that there
is insufficient evidence to support the finding. Raw Hide Oil & Gas, 766 S.W.2d at 275-76. We
will consider and weigh all the evidence in support of and contrary to the finding. Plas-Tex, Inc.
v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). The contested finding will be upheld
unless we find that (1) the evidence is too weak to support the finding, or (2) the finding is so
against the overwhelming weight of the evidence as to be manifestly unjust. Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965). We will not substitute our judgment for that of the trier of fact
merely because we reach a different conclusion. Otis Elevator Co. v. Joseph, 749 S.W.2d 920,
923 (Tex. App.--Houston [1st Dist.] 1988, no writ).

 The evidence was sufficient to show that both parties incorrectly believed that they
were operating under a single agreement. Goldblatt testified that he was unaware that the first
proposal had been changed and believed that all of the shareholders were party to the same
original agreement. Goldblatt was out of town for his mother's funeral when the second
agreement was distributed and did not recall receiving the information. Goldblatt admitted that
upon returning, he faced a large amount of mail and that the transaction at issue was not foremost
on his mind.

 While Goldblatt believed that only the first agreement existed and controlled,
Central Texas Imaging's agents testified that they believed all parties signed or ratified the second
agreement and, therefore, it controlled.

 In addition, several of the doctors who had executed the second agreement dated
their signature pages before the distribution of the second agreement to other doctors. 
Accordingly, the fact that Goldblatt's signature page was dated before the general distribution of
the second agreement would not have alerted appellees or their attorneys to the mistake. 
Witnesses for appellees testified that there were a number of discussions open to any of the parties
to the agreement regarding the second agreement but could not definitely recall whether Goldblatt
took part in those discussions. Goldblatt testified he did not participate in these discussions,
although some of the discussions were at formal meetings.

 We conclude that there is more than a "scintilla" of evidence to support a finding
of mutual mistake. Accordingly, Goldblatt's no-evidence argument must fail. Moreover, we
conclude that the evidence is such that reasonable minds could have found a mutual mistake
existed which allows rescission; Goldblatt's factual-sufficiency argument fails. We overrule
Goldblatt's seventh point of error.

 In his fifth point of error, Goldblatt asserts that appellees negligent actions created
the mutual mistake and such actions bar rescission. Appellees demonstrated that the second
agreement was distributed to all the doctors. Reasonable minds could conclude from the evidence
that if there were any negligent conduct in this transaction, it was predominantly that of Goldblatt
that caused his misconceptions. The evidence supports the trial court's express finding that
appellees were not negligent. Goldblatt's fifth point of error is overruled.

 In his third point of error, Goldblatt contends that rescission was not proper
because the evidence showed that appellees ratified the agreement as a matter of law, and the trial
court's finding to the contrary was against the great weight and preponderance of the evidence. 
Rescission based on mutual mistake may not be appropriate if the party seeking rescission ratified
the agreement. Goldblatt bears the burden of proof on this affirmative defense. The trial court
expressly found that appellees had not waived rescission by ratification or otherwise.

 Ratification occurs when a party recognizes the validity of a contract by acting
under it, performing under it, or affirmatively acknowledging it. Wetzel v. Sullivan, King &
Sabom, P.C., 745 S.W.2d 78, 81 (Tex. App.--Houston [1st Dist.] 1988, no writ). The elements
are (1) approval by act, word, or conduct, (2) with full knowledge of the facts of the earlier
agreement, and (3) with the intention of giving validity to the earlier agreement. Motel Enters.,
Inc. v. Nobani, 784 S.W.2d 545, 547 (Tex. App.--Houston [1st Dist.] 1990, no writ). A
ratification may be shown by express act or word or may be inferred from a party's course of
conduct. Id.

 To prevail on a legal-sufficiency challenge to an adverse finding on which he had
the burden of proof, Goldblatt must demonstrate that the evidence conclusively establishes all vital
facts in support of the issue. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989);
Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982). We must first examine whether any record
evidence supports the finding. If there is no evidence to support the finding, then we examine the
entire record to determine whether the contrary proposition is established as a matter of law. 
Sterner, 767 S.W.2d at 690. Only when the contrary proposition is established conclusively by
the evidence will we sustain the point of error. Meyerland Community Improvement Ass'n v.
Temple, 700 S.W.2d 263, 267 (Tex. App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.).

 To prevail on a factual-sufficiency challenge to an adverse finding on which he had
the burden of proof, Goldblatt must show that the finding is against the great weight and
preponderance of the evidence. Raw Hide Oil & Gas, Inc., 766 S.W.2d at 275-76. We must
consider and weigh all the evidence and should set aside the judgment only if it is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951); see also
Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986); see generally William Powers, Jr. & Jack
Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515 (1991).

 Goldblatt failed to show that Central Texas Imaging acted with the full knowledge
that Goldblatt had signed the first agreement rather than the second. Although there were some
earlier disputes involving other Central Texas Imaging investors, these disputes did not involve
any conflict between the two agreements. The only evidence of Central Texas Imaging's
knowledge of the immediate dispute is a letter to Central Texas Imaging's attorney dated June 27,
1990, over a month after Central Texas Imaging tendered payment to Goldblatt for the stock. 
Knowledge of disputes with other shareholders is insufficient to disturb the trial court's ruling
denying ratification with respect to Goldblatt. We conclude that there is some evidence to support
the trial court's finding of no ratification. Additionally, the weight of the record evidence does
not so overwhelmingly show ratification as to make the contrary finding manifestly unjust. We
overrule Goldblatt's third point of error.

 In his ninth point of error, Goldblatt contends that appellees have an adequate
remedy at law in that they could have sued their attorneys for mishandling the deal. Appellees
properly pleaded the absence of an adequate remedy at law. See Ferguson v. DRG/Colony North,
Ltd., 764 S.W.2d 874, 886 (Tex. App.--Austin 1989, writ denied). In order to preclude equitable
relief, the remedy at law must be complete and adequate. Rogers v. Daniel Oil & Royalty Co.,
110 S.W.2d 891, 894 (Tex. 1937). Goldblatt points out a possible, additional cause of action
against the corporation's attorneys. Although such an action may have resulted in a monetary
judgment, it could not resolve the dispute over the ownership of the stock. This remedy is not
"complete and adequate" and does not bar the issuance of the equitable remedy of rescission. We
overrule Goldblatt's ninth point of error.

 In his eighth point of error, Goldblatt assert the affirmative defense of laches. This
claim is without merit. Goldblatt complains that the appellees waited some twenty months after
his notice of resignation to amend their pleadings to add rescission as a basis of recovery. We
note that this amendment was only thirteen months after Goldblatt first refused to be bound by the
terms of the agreement. Goldblatt failed to show that appellees "slumbered" in exercising their
rights. See Callahan v. Giles, 155 S.W.2d 793, 795-96 (Tex. 1941). We conclude that the delay
was neither unreasonable nor caused any detrimental reliance by Goldblatt. See City of Fort
Worth v. Johnson, 388 S.W.2d 400, 403 (Tex. 1964). Goldblatt's eighth point of error is
overruled.

 In his sixth point of error, Goldblatt argues that the doctrine of "unclean hands"
bars recovery by the appellees. This claim is without merit. Goldblatt has failed to show that
appellees acted in an unlawful or inadequate manner. See Grohn v. Marquardt, 657 S.W.2d 851,
855 (Tex. App.--San Antonio 1983, writ ref'd n.r.e.). Goldblatt's sixth point of error is
overruled.

 In his fourth point of error, Goldblatt argues that the trial court's holding that the
agreement be rescinded is inconsistent with its holding that Walker, Danks, Brown, and
Williamson are the owners of the shares. The trial court did not hold that Walker, Danks, Brown,
and Williamson are the owners of the stock as a direct result of the rescission. Rather, the trial
court found that these individuals had obtained Central Texas Imaging's right to the stock by
assignment. We conclude that these holdings are not inconsistent. We overrule Goldblatt's fourth
point of error.

 In his tenth point of error, Goldblatt contends that the evidence is legally and
factually insufficient to support the trial court's finding that appellees timely exercised the optional
buy-out right under the agreement. We conclude that because the trial court based its holding on
a rescission of the agreement, any finding on timely execution of rights under that agreement is
irrelevant. Any error in making this finding is harmless. Tex. R. App. P. 81(b)(1). We overrule
Goldblatt's tenth point of error.



Attorney's Fees 


 In his first and second points of error, Goldblatt challenges the award of attorney's
fees to appellees. In his first point of error, Goldblatt argues that the award was not proper
because a rescission action is not a suit upon a contract under Texas Civil Practice and Remedies
Code section 38.001. In its ninth conclusion of law, the trial court concluded that appellees were
entitled to attorney's fees "pursuant to Defendant's [Goldblatt's] request for declaratory relief
under Chapter 37 of the Texas Civil Practice and Remedies Code, Plaintiffs' [appellees'] request
for declaratory relief under Chapter 37 of the Texas Civil Practice and Remedies Code, and
§ 38.001 of the Texas Civil Practice and Remedies Code." While Goldblatt correctly relies on
Ferguson for the principle that the relief afforded under section 38.001 does not apply when a
contract is rescinded, 764 S.W.2d at 887, his point of error does not dispose of all of the grounds
upon which attorney's fees were awarded. Appellees also pleaded for attorney's fees under
section 37.009 of the Texas Civil Practice and Remedies Code. As a result, Goldblatt bore the
burden of requesting segregation of fees in order to preserve error. Hruska v. First State Bank,
747 S.W.2d 783, 785 (Tex. 1988); Canales v. Zapatero, 773 S.W.2d 659 (Tex. App.--San
Antonio 1989, writ denied). By failing to request a segregation, Goldblatt has waived any error. 
We overrule Goldblatt's first point of error.

 The grant or denial of attorney's fees in a declaratory judgment action lies within
the discretion of the trial court, and its judgment will not be reversed absent a clear showing that
it abused its discretion. Oake v. Collin County, 692 S.W.2d 454, 455 (Tex. 1985); Edwin M.
Jones Oil Co. v. Pend Oreille Oil & Gas Co., 794 S.W.2d 442, 448 (Tex. App.--Corpus Christi
1990, writ denied).

 In his second point of error, Goldblatt contends that the award of attorney's fees
was improper because appellees failed to properly respond to relevant discovery requests,
rendering all evidence presented in support of the award automatically excluded. Goldblatt
contends that appellees failed to respond properly to discovery requests and, therefore, evidence
of attorney's fees should have been excluded, rendering the award unsupported by evidence. 
During the trial, the parties stipulated as to the amount of attorney's fees subject to Goldblatt's
objection to the attorney's fees testimony. In other words, if the objection were sustained and all
evidence that could provide a basis for the amount of attorney's fees excluded, the stipulation
would be disregarded. On the other hand, if any evidence that could provide a basis for attorney's
fees were admissible, the stipulation would be accepted as evidence of the amount of attorney's
fees.

 Through interrogatories, Goldblatt asked for, among other things, the amount of
attorney's fees, a description of the nature of the work performed (or itemized billing statements),
and the opinions and impressions of appellees' attorney as an expert. In their original and first
supplemental answers, appellees identified their attorney as an expert and gave a one-sentence
explanation of the subject of his testimony. In addition, appellees provided their attorney's
professional background, current affiliations, and hourly rate. At trial, Goldblatt objected to both
the appellees' attorney's testimony in general and to the substance of the testimony on the basis
of the failure to timely supplement the answers.

 The trial court ruled on the failure to supplement with regard to the substance of
the testimony and did not rule on the availability of appellees' attorney as an expert. Therefore,
Goldblatt preserved error only with regard to the substance of the potential testimony, which, in
this case, is in the form of a stipulation. Goldblatt has not preserved error with regard to whether
appellees' attorney could testify as an expert. Tex. R. App. P. 52(a).

 A party has a duty to reasonably supplement his responses to interrogatories not
less than thirty days before trial if he obtains information upon the basis of which he knows that
the response was incorrect or incomplete when made. Tex. R. Civ. P. 166b(6). If a party fails
to supplement timely, that party will not be allowed to present evidence on the supplemental
matter unless the trial court finds that there exists good cause sufficient to require admission. 
Tex. R. Civ. P. 215(5). The rule is mandatory, and its sanction is automatic. Alvarado v. Farah
Mfg. Co., Inc., 830 S.W.2d 911, 914 (Tex. 1992). The trial court has discretion, however, to
determine whether the offering party has met his burden of showing good cause to admit the
testimony. Id. As a matter of law, however, some factors, standing alone, are not grounds for
good cause. Id. Included among these are inadvertence of counsel, lack of surprise, and
uniqueness of the excluded evidence. Id. at 915.

 Appellees did not supplement their discovery responses thirty days before trial. 
When overruling the objection to the admissibility of the testimony on attorney's fees, the trial
court did not expressly find good cause but overruled the objections Goldblatt lodged. We must
determine whether the trial court abused its discretion in admitting the evidence (accepting the
stipulation) pursuant to an implicit finding of good cause.

 A decision which rests within the sound discretion of the trial court will not be
reversed absent a showing that it abused its discretion. Espinoza v. Victoria Bank & Trust Co.,
572 S.W.2d 816, 828 (Tex. Civ. App.--Corpus Christi 1978, writ ref'd n.r.e.). An abuse of
discretion implies more than an error in judgment; the trial court's decision must be arbitrary or
unreasonable. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985);
Landry v. Traveler's Ins. Co., 458 S.W.2d 649, 651 (Tex. 1970). A trial court's actions are
unreasonable only if the court acted without reference to any guiding rules and principles. 
Morrow v. H.E.B., Inc., 714 S.W.2d 297, 298 (Tex. 1986); Downer, 701 S.W.2d at 241-421. 
Further, the appellate court must review the evidence in the light most favorable to the action of
the trial court. Parks v. U.S. Home Corp., 652 S.W.2d 479, 485 (Tex. App.--Houston [1st Dist.]
1983, writ dism'd); Stout v. Christian, 593 S.W.2d 146, 151 (Tex. Civ. App.--Austin 1980, no
writ). As long as some evidence supporting the trial court exists, its decision is justified. Stout,
593 S.W.2d at 151. The appellate court cannot substitute its judgment for that of the trial court
if the trial court did not abuse its discretion. Downer, 701 S.W.2d at 242; Landry, 458 S.W.2d
at 651.

 Appellees' attorney testified that he failed to send billing records to Goldblatt timely
because he thought that the response, "to be provided," was sufficient to indicate that the records
would be available for inspection at a time convenient for both parties based on similar practices
associated with the production of documents. Appellees claim that they believed the initial
response was complete and did not require supplementation, especially in view of the fact that the
amount of fees incurred would change during the pendency of the lawsuit. When Goldblatt
informed appellees that he expected the billing statements to be delivered, appellees promptly
delivered the billing statements.

 We find that the trial court did not err in overruling the objection. The duty to
supplement does not arise until the responding party acquires information from which the party
knew that its original answer is incomplete when made. Tex. R. Civ. P. 166b(6)(a)(1); Exocet
Inc. v. Cordes, 815 S.W.2d 350, 353 (Tex. App.--Austin 1991, no writ). As soon as appellees
were aware of the misunderstanding was discovered, appellees delivered the billing summaries. 
The billing summaries provided ample documentation of legal fees. Therefore, evidence
regarding attorney's fees was admissible, and the stipulation is valid. We overrule Goldblatt's
second point of error.

 In his fifteenth point of error, Goldblatt argues that the trial court erred in failing
to award him attorney's fees. Goldblatt did not prevail on any issue he presented. We conclude
the trial court did not abuse its discretion in failing to award Goldblatt attorney's fees. See
Persons v. City of Fort Worth, 790 S.W.2d 865, 878-79 (Tex. App.--Fort Worth 1990, no writ). 
We overrule Goldblatt's fifteenth point of error.



Goldblatt's Counterclaims


 In points of error eleven through fourteen, Goldblatt argues that the trial court erred
in failing to award damages on his counterclaims for conversion of stock, breach of fiduciary
duty, breach of contract, and tortious interference with contractual rights. Goldblatt argues that
the evidence on these counterclaims was conclusive or, alternatively, that the finding was against
the great weight and preponderance of the evidence. All of Goldblatt's counterclaims are based
on the contract for the sale of the stock. In light of the rescission of the contract, these claims
fail. "When a contract is rescinded it is annulled and abrogated and the rights of the parties under
it are extinguished. If any cause of action exists it is necessarily independent of the contract and
separate and apart from any of its terms." Tuttlebee v. Tuttlebee, 702 S.W.2d 253, 257 (Tex.
App.--Corpus Christi 1985, no writ); see also Ferguson, 764 S.W.2d at 887; Manges v. Guerra,
621 S.W.2d 652 (Tex. App.--Waco 1981), aff'd in part, rev'd in part on other grounds, 673
S.W.2d 180 (Tex. 1984). Goldblatt's eleventh, twelfth, thirteenth, and fourteenth points of error
are overruled.



Procedural Issues


 In his sixteenth point of error, Goldblatt asserts that the trial court erred in making
additional findings of fact and conclusions of law after this appeal was perfected. The trial court
rendered its judgment on November 27, 1991, and made findings of fact and conclusion of law
on January 15, 1992. Goldblatt requested additional findings of fact and conclusions of law on
January 22, 1992. Goldblatt's motion for new trial was overruled by operation of law on
February 10, 1992. Goldblatt perfected his appeal on February 24, 1992, and the trial court
signed additional findings of fact and conclusions of law on February 25, 1992. These additional
findings of fact and conclusions of law are included in the transcript on appeal.

 An appellate court may consider late findings of fact and conclusions of law absent
a motion to strike and harm shown. Narisi v. Legend Diversified Inv., 715 S.W.2d 49, 50 n.2
(Tex. App.--Dallas 1986, writ ref'd n.r.e.); see also Summitt Bank v. Creative Cook, 730 S.W.2d
343, 345 (Tex. App.--San Antonio 1986, no writ). Where the findings of fact and conclusions of
law are filed in time to be included in the transcript on appeal and the appellant is not prevented
from making a proper presentation on appeal, there is no reversible error. Horizon Properties
Corp. v. Martinez, 513 S.W.2d 264, 266 (Tex. Civ. App.--El Paso 1974, writ ref'd n.r.e.). The
record reflects that the original findings of fact and conclusions of law were timely. Goldblatt not
only had the opportunity to request additional findings of fact and conclusions of law, but did so,
and the trial court made additional findings of fact and conclusions of law. Accordingly, the
record indicates no harm to Goldblatt. See Anderson v. Smith, 635 S.W.2d 204, 206 (Tex.
App.--Houston [1st Dist.] 1982, no writ); City of Corpus Christi v. Lone Star Fish & Oyster Co.,
335 S.W.2d 621, 622 (Tex. Civ. App.--San Antonio 1960, no writ). We conclude these additional
findings and conclusions are properly before this court for consideration and that the record shows
no harm because of their late filing. See Ford v. Darwin, 767 S.W.2d 851, 856 (Tex.
App.--Dallas 1989, writ denied); Morrison, 713 S.W.2d at 381; Labar v. Cox, 635 S.W.2d 801,
803 (Tex. App.--Corpus Christi 1982, writ ref'd n.r.e.); Gomez v. Gomez, 577 S.W.2d 327, 330
(Tex. Civ. App.--Corpus Christi 1979, writ ref'd n.r.e.). We overrule Goldblatt's sixteenth point
of error. 

 In his seventeenth point of error, Goldblatt contends the trial court erred in refusing
his request for a judgment denying appellees' claim for specific performance on the stock
subscription agreement. The final judgment rescinded the agreement and expressly denied all
other relief. By such judgment, the trial court did in fact deny the specific performance relief. 
Any additional order more specifically denying the specific performance claim would be
redundant. We overrule Goldblatt's seventeenth point of error.



CONCLUSION


 Having overruled each of Goldblatt's points of error, we affirm the judgment of
the trial court.



 

 Jimmy Carroll, Chief Justice

[Before Chief Justice Carroll, Justices Jones and Kidd]

Affirmed

Filed: June 2, 1993

[Do Not Publish]